# Mike Zaleskie, Admn. of the Estate of John Michael Zaleskie v. George T. Joyce and The Triumph Corporation

[333 A.2d 110]

No. 161-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed February 4, 1975

*Black & Plante,* White River Junction, for Plaintiff.

*Robinson E. Keyes, Esq.,* of *Ryan, Smith & Carbine,* Rutland, for George T. Joyce.

*Sarah E. Vail, Esq.,* of *Ainsworth & Richards,* Springfield, for the Triumph Corporation.

**Larrow, J.** This is an action for the wrongful death of plaintiff's decedent son, killed on April 18, 1970, in an accident involving the motorcycle he was operating and a car operated by the defendant Joyce. In verdicts based on Vermont law prior to enactment of the comparative negligence statute (12 V.S.A. § 1036), the jury returned a verdict for $25,000 against both defendants, a verdict for $12,500 in favor of defendant Joyce on his cross-claim against defendant The Triumph Corporation, and the court entered judgment on both verdicts. Defendant Triumph appeals from both judgments; defendant Joyce does not appeal.

The facts of the accident are somewhat unique, in that defendant Joyce, who was operating his automobile behind the motorcycle being ridden by the decedent, was also the dealer from whom the decedent had recently purchased the cycle. By his complaint, as amended, the plaintiff alleged that defendant Joyce negligently operated his automobile, and ran into the decedent or his cycle when decedent was catapulted onto the roadway as a result of mechanical failure. Against both defendants plaintiff alleged defective design and manufacture, with counts sounding in negligence and in breach of warranty,

and against Triumph plaintiff also alleged a failure to warn that "power shifting" could result in mechanical failure. Each defendant denied generally and pleaded contributory negligence. Defendant Joyce also pleaded assumption of risk, and cross-claimed against Triumph with the allegation that any damage resulted entirely without any fault on his part in the operation of his automobile.

Appellant Triumph, the admitted manufacturer of the motorcycle being ridden by the decedent, briefs three general questions for review here. In different order than presented, they are: (1) alleged error in striking from the record expert testimony tending to show that the decedent was under the influence of intoxicants at the time of the accident; (2) submission of the case against it on the doctrine of strict product liability, and (3) lack of pleading or proof justifying submission or rendition of the verdict against it on the cross-claim of defendant Joyce.

### Testimony as to Decedent's Blood Alcohol Content

As previously pointed out, defendant Triumph pleaded contributory negligence. On this issue, over objection, it presented expert testimony as to decedent's blood alcohol content, and also as to a high carbon monoxide content in his blood. Both lines of testimony were subsequently stricken and removed from jury consideration by the trial court. The reason expressed by the court was a lack of any evidence of causal connection between the condition and the accident.

The case against defendant Triumph was submitted to the jury on the theory of strict products liability, an action which we affirm, *infra*. And, although some parts of the charge seem to be inconsistent, appellant could well urge that taken as a whole, it instructed the jury that contributory negligence was not a defense to a case based on such liability. On this point there is considerable divergence of authority. *Cf. Maiorino* v. *Weco Products Co.*, 45 N.J. 570, 214 A.2d 18 (1965); *Hagenbuch* v. *Snap-On-Tools Corp.*, 339 F.Supp. 676 (D.N.H. 1973); and W. PROSSER, TORTS § 95, at 656–57 (3d ed. 1964). The point is not briefed by any of the parties. This fact, plus our concurrence with the trial court's evidentiary ruling,

precludes our ruling on this point before it is squarely presented.

And, for similar reasons, we are not called upon to rule upon the applicability of then 23 V.S.A. § 1189 (now repealed) in civil actions, when by its terms it created statutory presumptions applicable "in any criminal prosecution for the operation of a motor vehicle while under the influence of intoxicating liquor."

■■ As appellant points out, it is generally accepted in this state that breach of a safety statute makes a *prima facie* case of negligence. *Campbell* v. *Beede*, 124 Vt. 434, 207 A.2d 236 (1965). But it is also true, as *Campbell* points out, that such negligence must be a proximate cause of the accident which followed. We are pointed to no evidence, and we have discovered none, tending to establish a causal connection between intoxication or carbon monoxide blood content, if such there was, on the part of the cyclist, and the welding of gear to layshift and rear wheel stoppage with loss of control which expert testimony assigned as the cause of the accident. Certainly the average mind can see no such connection. Expert testimony assigned this fault to the defendant Triumph; there was no evidence that the manner of operation in any way affected the resultant product failure; in fact, the uncontradicted evidence was that there was nothing unusual in decedent's manner of operation.

The flaw in defendant's argument, and the very point on which we affirm the ruling of the trial court, is well set out in one of the cases it cites for reversal. In *Foy* v. *Ed Taussig, Inc.*, 220 So.2d 229 (La. 1969), the court, after viewing photographs of the accident scene, held that the plaintiff "could and would have avoided a collision with one of the very few trees which were there, even though the accelerator did stick." *Id.* at 235. This is an express recognition that negligence and causation must coincide to bar recovery. Granting evidence of negligence, evidence of causation was not present. In its absence, the admitted evidence could operate only to prejudice the plaintiff, and it was properly withdrawn from the jury's consideration. *See also*, for proof of proximate cause as a requirement, *Bolduc* v. *Coffin*, 133 Vt. 67, 70, 329 A.2d 655 (No. 164–73, 1974).

## Strict Product Liability

Squarely presented to this Court for the first time is the applicability in this jurisdiction of the doctrine denominated as "strict product liability" as embodied in RESTATEMENT (SECOND) OF TORTS § 402A (1965). The doctrine was charged by the trial court as against the defendant Triumph. No claim is here made that it was incorrectly charged; the contention is that it should not have been charged at all, because it was not specifically pleaded, because its essential elements were not proven, and because it is not the law of this state.

The section in question reads as follows:

§ 402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer*

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Three *caveats* follow the statement of the rule, none being applicable to the instant case.

■ An extensive review of the history and development of the doctrine embodied in the Restatement would serve little purpose. Current legal literature abounds with such discussion. Suffice it to say that, with its roots in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal. Rptr. 697, 37 P.2d 897 (1963), it has gained rapid acceptance in many jurisdictions. Annot., 13 A.L.R.3rd 1057, 1065 (1967). Various rea-

sons have been advanced for its adoption, including availability of proof, reliance on advertising and reputation, increasingly high standards, increased complications of marketing, and assignment of liability as a cost of manufacture or sale. *Cf.* 63 Am.Jur.2d *Products Liability* § 124. As pointed out by Prosser (Prosser, The Assault Upon the Citadel, 69 YALE L.J. 1099, 1134 (1960)), the doctrine is simply a logical extension of the strict liability heretofore applied to animals, abnormally dangerous activities, nuisance, workmen's compensation, and respondeat superior cases. Its adoption in this state has been forecast, and partially developed, in decided cases. *Wasik* v. *Borg*, 423 F.2d 44 (2d Cir. 1970), charging the substance of the Restatement; *O'Brien* v. *Comstock Foods, Inc.*, 125 Vt. 158, 212 A.2d 69 (1965), abrogating the defense of lack of privity and emphasizing liability imposed by law from the nature of the transaction and the circumstances of the parties; *Rogers* v. *W. T. Grant Co.*, 132 Vt. 485, 321 A.2d 54 (1974), emphasizing the implied warranty of merchantibility under the Uniform Sales Act; 9A V.S.A. §§ 2—313 to 2—318, inclusive, imposing warranties and extending their applicability. Indeed, a careful examination of *Rothberg* v. *Olenik*, 128 Vt. 295, 262 A.2d 461 (1970), reveals that this Court, in extending the doctrine of implied warranty to a newly constructed home, did so by analogy to the sale of an automobile or other manufactured product, and expressly approved quoted language from *Henningsen* v. *Bloomfield Motors*, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960), a leading case applying the doctrine of strict liability to a manufacturer of personal property. Having approved a further development of the doctrine, rejection of the doctrine itself would be most illogical. We hold that the trial court correctly charged the rule of strict product liability, embodied in the quoted § 402A, as the law of this jurisdiction.

■ Triumph's further objection that the doctrine was not sufficiently pleaded or proved is not well-founded. True it is that there is no specific count in plaintiff's complaint labelled "strict liability." But an examination of the factual allegations indicates that all the essential elements of such a theory of liability, as outlined in the quoted section, § 402A, of the Restatement of Torts, are pleaded. An examination of the record

indicates that, viewed in the light favorable to plaintiff, there was evidence to support the allegations. Indeed, Triumph points out no shortcomings whatever in this particular. All of this supporting evidence came in without the objection now asserted. Nor do we find the objection in Triumph's post-judgment motions, or its exceptions to the charge, which simply asserted the non-existence of the general doctrine in Vermont. We think that the spirit, if not the precise letter, of V.R.C.P. 8(a) (requiring a short and plain statement of the claim), of V.R.C.P. 8(e) (requiring each averment to be simple, concise and direct), of V.R.C.P. 8(f) (requiring pleadings to be construed to do substantial justice), and of V.R.C.P. 54(c) (permitting final judgments for any relief to which the pleader is entitled, even though not demanded), has been amply complied with. Even were this not so, the general conduct of the trial, as outlined, indicates the defendant pleaded, and attempted to prove, all defenses available to it under any theory.

> We see no reason to treat issues which were fully litigated as if they had not been litigated, where no prejudice to the appellant has been suggested or is apparent from the record. *Wasik* v. *Borg, supra,* 423 F.2d at 46.

*Accord, Alvarez* v. *Felker Mfg. Co.,* 230 Cal.App.2d 987, 41 Cal. Rptr. 514 (1964).

█ All facts essential for recovery having been pleaded and no available defenses having been precluded, the failure to make below the objection to the sufficiency of the pleadings now asserted is waived. *Vaillancourt* v. *Dutton,* 115 Vt. 36, 50 A.2d 762 (1947). See also V.R.C.P. 15(b), permitting amendment to conform to the evidence even after judgment, and providing that failure to amend does not affect the result of trial as to issues actually tried.

█ The judgment in chief against the two defendants jointly must be affirmed.

### The Cross-Claim

Defendant Triumph here claims that the cross-claim of Joyce against it failed to adequately plead any facts or theory upon which recovery could be sustained. It also asserts that

there can be no recovery, in any event, under *Howard* v. *Spafford*, 132 Vt. 434, 321 A.2d 74 (1974), denying contribution between joint tortfeasors.

Important to note in connection with this claim is that although the original complaint sought recovery against defendant Joyce on the ground of negligent operation of his automobile and for negligence and breach of warranty in his capacity as motorcycle dealer for Triumph, the latter grounds of liability were abandoned on trial. Recovery against Joyce was sought only on the basis of his negligent operation, and this was the only basis for a verdict against him submitted to the jury. The strategic reasons which may have dictated this course of action are not for our consideration. But the resulting posture of the litigation precludes application of the holding of *Digregorio* v. *Champlain Valley Fruit Co.*, 127 Vt. 562, 255 A.2d 183 (1969). If recovery against Joyce had been based upon his role as seller of the motorcycle, it could well be said, as in *Digregorio*, that the defendants were not in equal fault, that Joyce was entitled to rely upon Triumph's implied warranty to him, and that this right was one of indemnity, not contribution.

■■ The cross-claim set forth in the answer of defendant Joyce was at best minimum pleading. We incline to the view that, read in light of the allegations of the answer with respect to improper design and manufacture by Triumph beyond Joyce's knowledge and control, it could be held sufficient under V.R.C.P. 8(f) and V.R.C.P. 54(c), discussed above. And, even if not sufficient, it does not appear from the record that the insufficiency was raised at any of the times, extending through trial, permitted under V.R.C.P. 12(h)(2). And any claimed error in the charge in this respect is waived under V.R.C.P. 51(b), no objection having been made.

The verdict and judgment on the cross-claim are, however, unsupportable on other grounds. As we have pointed out above, they cannot be sustained under *Digregorio*. Defendant Joyce urged below, and urges here, that they can be affirmed on the theory that his negligence was "passive" and that of the defendant Triumph "active." He also characterizes their respective negligences as "primary" and "secondary." Apart from the fact that factual analysis would seem to indicate a

reversal of the roles contended for, even on his theory, other considerations defeat it.

The distinction between "primary" and "secondary" negligence finds recognition in *Digregorio, supra.* But, as pointed out, that theory is not applicable here. The "active" and "passive" distinction was the one asserted below. Although of doubtful application to the facts here, it has, as defendant Joyce indicates, support in some cases. As therein delineated, it is a qualitative distinction, somewhat resembling, as between two tortfeasors, the doctrine of last clear chance. *Sargent* v. *International Bakeries, Inc.,* 86 Ill. App.2d 187, 229 N.E.2d 769 (1967) ; *United Airlines* v. *Weiner,* 335 F.2d 379 (9th Cir. 1964). We are cited to no cases, and we know of none, adopting the theory in this jurisdiction. And we do not consider the issue to be raised clearly enough in this litigation to pass upon its validity.

■ As pointed out in the brief of defendant Joyce, in the cases cited, and in *Digregorio,* the underlying theory is one of indemnification, not of contribution. For that reason, it is not within the prohibition of *Howard* v. *Spafford, supra.* But, as *Digregorio* points out, indemnity is for the total loss sustained by the prevailing joint tortfeasor, not a portion of it. The jury here was so instructed. And they were clearly charged at least twice that they were to consider the cross-claim *only* if they returned a plaintiff's verdict against defendant Joyce *alone.* They returned a joint verdict against both defendants, so that their verdict on the cross-claim, and the resultant judgment, cannot be sustained under the instructions of the court. The verdict on the cross-claim can only be construed as an effort to indicate a desire that the defendants respond equally to the plaintiff. This may be a commendable sentiment, but it is not permissible under the law of this state, which permits a plaintiff to pursue all, or any part, of his recovery from either joint tortfeasor. *Howard* v. *Spafford, supra.* As contrary to the court's instructions, and contrary to established law, the verdict and judgment on the cross-claim must be reversed.

*The judgment for plaintiff against both defendants is affirmed. The judgment for defendant Joyce against defendant*

*Triumph on his cross-claim is reversed, and judgment is rendered thereon for the defendant Triumph.*