# Thomas Morris v. American Motors Corporation v. Essex International

[459 A.2d 968]

No. 111-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed October 18, 1982

Motion for Reargument Denied March 21, 1983

*Doremus, Congleton & Jenkins,* Essex Junction, for Plaintiff-Appellee.

*Allan T. Fisher* of *Dinse, Allen & Erdmann,* Burlington, for Defendant-Appellant American Motors.

*Thomas E. McCormick* of *McNamara & Fitzpatrick, Inc.,* Burlington, for Essex International.

Barney, C.J. The plaintiff was injured while working with a friend to correct a problem he was having starting his car. Thinking the problem was a loose connection between the battery cable and the solenoid, a component part in the starter system, the plaintiff's friend tightened the nut which held the cable in place. Thereupon the starter turned over, the motor engaged, and the car lurched backward, pinning the plaintiff at his knees against the bumper of another car.

Claiming defects in the design of the starter system and in the solenoid itself, and alleging negligence in the car's manufacture, inspection, and sale, the plaintiff sued the assembler-

manufacturer, American Motors Corporation, and the dealer which had sold him the car, Al Izzi's Motor Sales, Inc. AMC, seeking to pass on any liability that might be found against it, impleaded the manufacturer of the solenoid component, Essex International. After stipulating to a dismissal of the car dealer from the case, the three remaining parties proceeded to trial.

The plaintiff complained and tried his case against American Motors Corporation on three alternate theories of liability: negligence, strict liability, and breach of warranty. AMC denied any wrongdoing on its part and answered that the plaintiff had been contributorily negligent and had assumed any risk involved. It further claimed as a third-party plaintiff against Essex, that if it was found liable to the plaintiff, Essex should be liable to it on a breach of warranty theory. This claim was enlarged during trial to include a second cause of action based on strict liability.

The jury was provided with interrogatories which asked separately about AMC's liability to the plaintiff on each of the three theories, and required it, if it found American Motors liable in negligence, to decide the issue of comparative negligence. It was asked to set damages and apportion them between the plaintiff and AMC. No interrogatories, however, were submitted on the claim of American Motors against Essex, the court simply instructing the jury as follows:

> Only if you find that the plaintiff is to recover do you go into the third-party claim of American Motors Corporation versus Essex International. And only then will you sign this other verdict which is a third, it's entitled to a third-party action. It's brand-new case. It's American Motors versus International.
>
> If you think that International is liable to American Motors, then you just put it in there for the same amount that American Motors had to pay the plaintiff. If you find that Essex International is not liable to the plaintiff, then you'll sign the defendant's verdict.

Five hours after the jury began its deliberations, an inquiry was sent to the bench concerning damages. The foreman asked if one dollar amount could be entered on the verdict form in the main case, and a different dollar amount could be entered in the case of American Motors Corporation versus Es-

sex. Over AMC's objection the following exchange then took place:

> THE COURT: Not if on the warranty theory. On the strict liability theory, it could not be different. But on the third theory, it could be different where you've got comparative negligence. In other words, the plaintiff might be negligent in his case against American Motors, and when American Motors brings their suit against Essex, they might have been negligent in something that they did along with the other one. And you'd have to weigh their negligence. Now does that clear that up?
>
> FOREMAN JENKINS: In other words, it's only in the third question, third theory, whatever we want to call it, that that, the liability is split, then, so to speak?
>
> THE COURT: If you're going to find against the third party here.

The jury subsequently returned a verdict in the plaintiff's favor in the amount of $30,000, based on a finding that American Motors Corporation was negligent. It apparently declined to consider the theories of strict liability and breach of warranty, since those interrogatories were not answered either yes or not. The jury further indicated that the plaintiff had not been guilty of any contributory negligence. In the matter of AMC versus Essex International it entered a verdict in AMC's favor in the amount of $15,000, without further explanation.

Both defendants appeal, contending that liability against them was wrongfully assessed. AMC claims that there was insufficient evidence on which a verdict in negligence could be returned against it, faults the jury instruction on contributory negligence, and beyond that argues that, if anything, the law requires full reimbursement of the $30,000 verdict against it from Essex International, rather than the 50% recovery that was awarded. Essex questions whether there is any legal basis for finding it liable to American Motors in a third-party action. Because the facts are critical to an analysis of the legal complexities of this case, we turn first to a review of them as they are before us.

In December of 1973 the plaintiff purchased a new AMC Hornet from Al Izzi's Motor Sales, Inc., an independent automobile dealer operating in Rhode Island under a franchise

agreement with American Motors Corporation. Included in his purchase was a Buyer Protection Plan which guaranteed the car for 12 months or 12,000 miles. The Plan promised that "if anything we did goes wrong with your 1974 car, we'll fix it free. *Anything.*" It continued:

> When you buy a new 1974 AMC car from an American Motors Corporation dealer, American Motors Corporation guarantees to you that, except for tires, it will pay for the repair or replacement of any part it supplies that is defective in material or workmanship. This guarantee is good for 12 months from the date the car is first used or 12,000 miles, whichever comes first.

About one week after purchase, the plaintiff began to experience difficulty shutting off the car engine. He testified that he contacted the dealer, that the dealer told him that American Motors had "put out a bulletin on it," and that the dealer then advised him how to stop the car until it could be brought in for service. The servicing was performed in January of 1974, and there is no dispute that the car was still under warranty. Although there was conflicting testimony at trial, on appeal the parties are in agreement that a new solenoid was installed, and it is undisputed that this was the first and last time any work was done on the solenoid prior to the date of the accident. Both the original solenoid and its replacement were manufactured by Essex International.

The car ran properly until February of 1976, when the plaintiff began having problems starting the car. Sometimes it would start and sometimes it would not. One day when he had had some trouble with it he asked a friend if he would look the car over with him, and the two examined the car in the plaintiff's garage. While the friend looked under the hood, the plaintiff attempted to start the car. The friend saw sparks coming from where the battery cable attached to the solenoid, and indicating that he thought he knew what the problem was, told the plaintiff he didn't have to turn the key anymore.

The plaintiff put the car in reverse, as was required by the car's design if one wanted to remove the key, turned the key to lock, and got out. As he crossed behind the car to close the garage door, his friend tightened the nut on the stud attaching the battery lead to the solenoid. Suddenly the starter activated,

the car, in reverse, was set in motion, and the plaintiff was pinned between its bumper and the bumper of a car parked behind it in the driveway. As a result he suffered leg injuries and other damages. It was later discovered that the solenoid was defective and had short circuited.

■■ As in any case in which negligence is alleged as the basis of liability, the plaintiff bore the burden of proof at trial to show that the party from whom he sought recovery, American Motors Corporation, had owed him a duty of care, that the duty of care had been breached, and that the breach proximately caused his injury. Since in this case a number of different acts and omissions on the part of AMC were put forward alternatively as the breach of duty causing injury, in light of AMC's claim that the plaintiff failed to meet his burden, we are compelled to sift through the evidence to determine if any single theory of liability was sufficiently proved to sustain the plaintiff's case. The jury's general verdict gives no clue as to which theory it found convincing, but general verdicts will be construed to give them effect if that can reasonably be done. *Brunelle* v. *Coffey,* 128 Vt. 367, 373, 264 A.2d 782, 787 (1970).

■ The crucial concern is that there be evidence enough to support the verdict which is premised on a sufficient allegation of negligence. As we have said, to establish negligence the facts must demonstrate that the defendant breached a duty owed to the plaintiff, together with proof that but for the breach of that duty the injury complained of would not have occurred. *Rivers* v. *State,* 133 Vt. 11, 13, 328 A.2d 398 (1974). The breach must be part of the proximate cause of the injuring event, and, since it is a duty, the consequences of its breach, to be chargeable to the defendant, must be foreseeable.

■ The plaintiff's allegations of certain acts of negligence do not meet this measure. The claim of improper ignition locking design fails the "but for" test in that the evidence did not indicate that the key was removed. The putting of the transmission in reverse was not, then, a design-compelled act, and negligence in design could not be thereby established.

With respect to the claims of negligent manufacture on AMC's part, lack of proper testing and inspection and duty to warn of latent danger or defect, the evidence simply was not

introduced in the case that would support a finding of liability on any of these grounds. At trial, the plaintiff never took issue with AMC's testing and inspection procedures, as his brief concedes.

██ There remains a theory of negligence against which the evidence and the verdict should be measured. The standard of care imposed on an assembler-manufacturer of automobiles is one of due care, to make its product carefully so that it is safe for its intended use. *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 389, 111 N.E. 1050, 1053 (1916). Assembler-manufacturers have long been held liable for defects in component parts manufactured by others and incorporated into their finished products where they have been negligent in testing or inspecting the component before releasing the finished product on the market, *id.* at 394, 111 N.E. at 1055, or in failing to warn of latent defects in the product of which the seller is or should be aware. *Comstock* v. *General Motors Corp.*, 358 Mich. 163, 176–78, 99 N.W.2d 627, 634 (1959). Additionally, in accord with this well-settled duty on the part of the assembler-manufacturer to place a safe product on the market, courts are increasingly holding such companies vicariously liable for the negligence of the makers of their components used in the assembled vehicle, without requiring any showing of a negligent act or omission by the car manufacturers themselves. See, e.g., *Ford Motor Co.* v. *Mathis*, 322 F.2d 267, 272–74 (5th Cir. 1963); *Markel* v. *Spencer*, 5 A.2d 400, 409, 171 N.Y.S.2d 770, 780 (1958); see Annot., 3 A.L.R.3d 1016, 1038–39 (1965).

██ This theory approaches strict liability in tort whereby an assembler-manufacturer may be held liable simply because it is in the business of selling cars and sold one which proved to be defective and caused injury, regardless of the negligent or nonnegligent source of the defect. However, the two actions are not the same, and this theory properly sounds in negligence since plaintiffs are not relieved of the necessity of showing that some negligence was committed, at least by the manufacturer of the component part. *Vandermark* v. *Ford Motor Co.*, 37 Cal. Rptr. 896, 898, 391 P.2d 168, 170–71 (1964).

While we have not had to address this particular question directly in our previous cases, in light of the fact that this case was largely tried and submitted to the jury on the basis of a

defect in a component admittedly not manufactured by AMC, that question is not squarely presented. Finding the doctrine of vicarious liability to have a well-reasoned application in product liability cases, see *Ford Motor Co.* v. *Mathis, supra,* 322 F.2d at 273–74 (and cases cited therein), and to be in accord with our prior recognition of manufacturer-seller responsibility in *Zaleskie* v. *Joyce,* 133 Vt. 150, 333 A.2d 110 (1975) (adopting strict product liability), we hold it to be available to plaintiffs in such cases where suit is brought in negligence and the relevant issues are fairly raised. Having approved a further development of the doctrine, rejection of the doctrine itself would be most illogical, *id.* at 155, 333 A.2d at 113–14, and we find no prejudice to the defendant by labeling plaintiff's claim vicarious liability at this time. See *id.* at 155–56, 333 A.2d at 114 (quoting *Wasik* v. *Borg,* 423 F.2d 44, 46 (2d Cir. 1970)).

The defendant argues that it cannot be held vicariously liable for any negligence found on the part of the component manufacturer because the part claimed to be defective was a replacement part, and not part of the original equipment on the vehicle as it was sold by the assembler-manufacturer. We disagree. The defendant's argument simply does not comport with the commercial realities of automobile sales today. The consumer who purchases a new car from a dealer purchases a package which includes far more than the item delivered itself. In addition to the vehicle he becomes entitled to parts and service for a given length of time or a given number of miles under certain conditions. One of these is that he request any covered parts or service only from a dealer authorized by the manufacturer and acting on its behalf, without any discretion on his own part regarding what service should be performed, or how, or what parts should be replaced, or with what substitutes. See *Goodrich* v. *Ford Motor Co.,* 269 Or. 399, 408–09, 525 P.2d 130, 135 (1974).

■ AMC held itself out as responsible for this car until the warranty period was up. Common understanding tells us that if something had gone wrong with the replacement solenoid one week after installation, AMC would have been obligated to furnish and install a third solenoid in its place. American Motors Corporation's own representative testified that it

was reasonable for the plaintiff to believe he was dealing with AMC when the solenoid was replaced. It was also reasonable for him to have believed the replacement solenoid was an integral part of his American Motors Corporation-backed car when he drove it away from the dealership after servicing.

The rule of vicarious liability is found in the Restatement of Torts, where it is said that a product seller may be held liable for a product made by another, if the seller holds the product out as his own. Restatement (Second) of Torts § 400 (1965). Intended to fix responsibility where it will most effectively reduce the hazards to consumers from defective products that reach the market, see *Escola* v. *Coca Cola Bottling Co.*, 24 Cal. 2d 453, 462, 150 P.2d 436, 440 (1944) (Traynor, J., concurring), the rule applies equally well where an assembler-manufacturer causes a product to be used in reliance upon a belief that it has required the product to be made properly for him, and that its reputation is an assurance to the consumer of the quality of the product. *Ford Motor Co.* v. *Mathis, supra*, 322 F.2d at 273 n.9.

Thus, if the solenoid was defective, and that defect was the result of the component manufacturer's negligence, American Motors Corporation cannot avoid vicarious liability for it. We find ample evidence from which a reasonable jury could have found that to be the case. The plaintiff offered testimony on the issues of negligent design, manufacture, and testing and inspection by Essex International. The defendant attempted to rebut the evidence, but as the jury verdict indicates, it failed in at least one area. That is sufficient to support a finding of liability.

We must, however, dispose of one more issue before turning our attention to the question of damages. American Motors Corporation also claims error in the failure of the trial court to instruct the jury that the plaintiff could be charged with any negligence that might be found on the part of his friend. The claim was advanced under a theory of joint enterprise, incorporating, as it does, principles of agency law. We find the claim to be without merit.

Even ignoring the fact that the defendant made no request for a charge on this point, and regardless of whether or not imputed contributory negligence is a matter which we would

576

require to be affirmatively pleaded under V.R.C.P. 8(c), we find no evidence of an agency relationship or a joint enterprise here. The plaintiff, to whom the acts of the friend are sought to be imputed, had no authority to direct or control his friend's activities. The friend was merely a gratuitous helper. The two were engaged in an enterprise with a single object, to be sure, but this alone is not enough. *Loomis* v. *Abelson*, 101 Vt. 459, 462, 144 A. 378, 379 (1929). The finding of liability in the defendant, American Motors Corporation, must be affirmed.

American Motors Corporation also questions the correctness of the trial court's instruction to the jury on its claim against Essex International for indemnification. It maintains that recovery against an indemnitor is for the total loss sustained by the defendant in the main action, and cannot be divided. Essex cross-claims with the argument that it cannot be held liable under any theory of recovery, and specifically under a claim of negligence, (1) since it was never sued in negligence, and (2) Vermont does not permit contribution among joint wrongdoers.

At the outset we decline to consider the arguments of Essex International regarding AMC's ability to recover against it under theories of breach of warranty or strict liability. The exchange between the court and the foreman of the jury quoted *supra* indicates to us that the jury believed it could only act as it did in regard to damages if it allowed recovery based on negligence.

Furthermore, indemnity is a right accruing to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another. *Viens* v. *Anthony Co.*, 282 F. Supp. 983, 986 (D. Vt. 1968). Where the parties are not in equal fault, the rule against contribution among wrongdoers does not apply. *Digregorio* v. *Champlain Valley Fruit Co.*, 127 Vt. 562, 565, 255 A.2d 183, 186 (1969).

The fact that AMC's complaint was brought on the basis of warranty, and was amended only so far as to include strict liability, will not defeat a verdict in its favor in negligence where the issue was raised at trial and evidence was presented without objection from the defendant. *Stevens* v. *Cross Abbott Co.*, 129 Vt. 538, 541, 283 A.2d 249, 251 (1971);

*Digregorio* v. *Champlain Valley Fruit Co., supra,* 127 Vt. at 565, 255 A.2d at 185; *Vaillancourt* v. *Dutton,* 115 Vt. 36, 37, 50 A.2d 762, 763 (1947).

Indemnity, however, is for the total loss sustained by the prevailing party. *Zaleskie* v. *Joyce, supra,* 133 Vt. at 158, 333 A.2d at 115. Here the jury returned a verdict of only one-half the total loss sustained by AMC in the main action. Since we will not presume a departure from the court's instructions on the part of the jurors, contrary to their oath, *Childrens' Home, Inc.* v. *State Highway Board,* 125 Vt. 93, 100, 211 A.2d 257, 262 (1965), that action can only have resulted from the court's erroneous supplemental instruction on this point. The jury was *not* at liberty to weigh respective negligence of AMC and Essex under Vermont law, *Howard* v. *Spafford,* 132 Vt. 434, 321 A.2d 74 (1974); thus its verdict in the third-party action must be reversed.

Where error requires reversal, but the record affords the means of correcting it, the cause will not be remanded, but will be corrected on appeal. *Hopkins* v. *Veo,* 98 Vt. 433, 436, 129 A. 157, 158 (1925).

*The judgment in favor of the plaintiff as to liability is affirmed. The judgment in favor of the third-party plaintiff as to indemnification is vacated and judgment in the amount of $30,000 is hereby ordered to be entered.*