742 A.2d 734 (1999)
Anthony G. WHITE, Individually and as Administrator of the Estate of Elizabeth L. White
v.
QUECHEE LAKES LANDOWNERS' ASSOCIATION, INC.
v.
Helo Factories, Ltd.
No. 98-243.
Supreme Court of Vermont.
September 24, 1999.
*735 Kaveh S. Shahi of Cleary Shahi Associates, P.C., Rutland, for Third-Party Plaintiff-Appellant.
Robert D. Rachlin, Walter E. Judge, Jr. and Eric A. Poehlmann of Downs Rachlin & Martin PLLC, Burlington, for Third-Party Defendant-Appellee.
Present AMESTOY, C.J., MORSE, JOHNSON and SKOGLUND, JJ., and GIBSON, J. (Ret.), Specially Assigned.
AMESTOY, C.J.
This is an indemnity case concerning the tragic death of a woman who lost consciousness in a sauna owned and operated by third-party plaintiff Quechee Lakes Landowners' Association. The plaintiff in the underlying action, Anthony White, obtained a $450,000 settlement from Quechee Lakes following the close of evidence in a wrongful death suit in which he claimed that Quechee Lakes's negligence caused his wife's death. Following the settlement, Quechee Lakes filed suit seeking indemnity from the manufacturer and distributor of the sauna heating unit and control panel, third-party defendant Helo Factories, Ltd. The superior court granted summary judgment in favor of Helo, and Quechee Lakes now appeals that judgment. We agree with the superior court that, as a matter of law, Quechee Lakes is not entitled to indemnification; accordingly, we affirm the court's judgment.

I. Facts and Procedural History

Quechee Lakes owns and operates a health club for the recreational use of its members. The club maintains saunas within its men's and women's locker room facilities. Helo manufactured the heating unit and control panel used in the women's sauna, but was not involved in designing or constructing the sauna itself. In 1973, before ownership of the resort was transferred to the Quechee Lakes Landowners' Association, the developer hired an independent contractor to construct the sauna. Quechee Lakes operated and maintained the sauna without incident until February 1, 1994, when Elizabeth White was found lying unconscious on the floor of the sauna. She died several days later as the result of irreversible hyperthermia, leaving behind her husband and three young children.
*736 Anthony White filed two wrongful death actions, one against Quechee Lakes in the superior court in January 1995, and the other against Helo in federal court approximately one year later. The federal case eventually settled. In the state court action, Mr. White alleged that Quechee Lakes failed to implement necessary safeguards concerning use of the women's sauna, including screening users, monitoring use, posting an adequate warning sign, and adding an automatic shutoff device, a timer, a clock, a thermometer, and a window in the sauna door. He also alleged that a Quechee Lakes employee negligently turned up the heat while his wife was in the sauna, without first checking to see if anyone was inside.
In turn, Quechee Lakes filed a third-party complaint against Helo, but the parties agreed to sever that complaint and postpone its resolution pending the outcome of the underlying action, which was contested in an eight-day trial in October 1997. Following the close of evidence in that trial, but before the case was submitted to the jury, the parties reached a $450,000 settlement agreement. The agreement explicitly reserved Quechee Lakes's right to seek indemnification from Helo, stating that the settlement was not for any active or independent negligence on Quechee Lakes's part.
After the underlying action settled, Helo and Quechee Lakes filed opposing motions for summary judgment regarding the third-party complaint. Relying on the Restatement of Restitution § 95 (1937), which this Court adopted in Bardwell Motor Inn, Inc. v. Accavallo, 135 Vt. 571, 573, 381 A.2d 1061, 1062 (1977), the superior court ruled that Helo was entitled to judgment as a matter of law on the implied indemnification claim because for twenty years preceding the accident Quechee Lakes had acquiesced in the continuation of any dangerous condition in the sauna attributable to Helo. After its motion for reconsideration was rejected, Quechee Lakes filed this appeal, arguing that the superior court erred by (1) basing its decision on grounds not raised in Helo's motion for summary judgment; (2) placing the burden on Quechee Lakes to prove that it had not acquiesced in any dangerous condition concerning the sauna; (3) relying on evidence not submitted by the parties with their summary judgment motions; (4) incorrectly applying § 95 of the Restatement of Restitution to the facts of this case; and (5) concluding that there were no material issues of disputed fact precluding summary judgment in Helo's favor.

II. The Standard of Review

In reviewing a decision to grant summary judgment, we apply the same standard as the trial court, requiring the moving party to prove both that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See V.R.C.P. 56(c); Chapman v. Sparta, 167 Vt. 157, 159, 702 A.2d 132, 134 (1997); Peters v. Mindell, 159 Vt. 424, 426, 620 A.2d 1268, 1269 (1992). In determining whether a dispute over material facts exists, we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material. See Chapman, 167 Vt. at 159, 702 A.2d at 134. Nevertheless, the party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings, "but ... must set forth specific facts showing that there is a genuine issue for trial." V.R.C.P. 56(e). Thus, mere conclusory allegations without facts to support them are "insufficient to sustain a complaint for indemnity." Central Hudson G. & E. Corp. v. Hatzel & Beuhler, Inc., 24 Misc.2d 434, 202 N.Y.S.2d 818, 822 (Sup.Ct.1956), aff'd, 11 A.D.2d 707, 205 N.Y.S.2d 864 (1960).

III. The Law of Indemnity

The right to indemnity, which is an exception to our longstanding rule barring contribution among joint tortfeasors, see Chapman, 167 Vt. at 159, 702 A.2d at 134, exists only when one party has expressly *737 agreed to indemnify another, or when the circumstances are such that the law will imply such an undertaking. See id.; Bardwell, 135 Vt. at 572, 381 A.2d at 1062. Because of the rule against contribution among joint tortfeasors and the fact that indemnification shifts the entire loss from one party to another, see Peters, 159 Vt. at 428, 620 A.2d at 1270, one who has taken an active part in negligently injuring another is not entitled to indemnification from a second tortfeasor who also negligently caused the injury. See Fireside Motors, Inc. v. Nissan Motor Corp., 395 Mass. 366, 479 N.E.2d 1386, 1389 (1985). Rather, indemnification accrues "to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." Morris v. American Motors Corp., 142 Vt. 566, 576, 459 A.2d 968, 974 (1982). Generally, indemnity will be imputed only when equitable considerations concerning the nature of the parties' obligations to one another or the significant difference in the kind or quality of their conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party to another. See W. Keeton, Prosser and Keeton on the Law of Torts § 51, at 344 (5th ed.1984).
While it is difficult to state a general rule that will cover all cases, see id. at 343, implied indemnification is usually appropriate only when the indemnitee is vicariously or secondarily liable to a third person because of some legal relationship with that person or because of the indemnitee's failure to discover a dangerous condition caused by the act of the indemnitor, who is primarily responsible for the condition. See id. at 341-43; Viens v. Anthony Co., 282 F.Supp. 983, 986 (D.Vt.1968). This latter principle is set forth in Restatement of Restitution § 95 (1937), which provides:
Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.
Applying this and the other principles stated above, this Court has held that (1) an engineering company that contracted with the sellers of a home to design and build a septic system would have to indemnify the sellers should they be found liable to the buyers for a defective condition in the system, so long as the sellers did not acquiesce in that condition, see Peters, 159 Vt. at 429, 620 A.2d at 1272; (2) the manufacturer of a defective automobile part was required to indemnify the automobile manufacturer for injuries sustained as a result of the defect, see Morris, 142 Vt. at 577, 459 A.2d at 974; (3) an independent contractor was required to indemnify a hotel operator for injuries sustained when a patron was struck by an automatic door that the operator had hired the contractor to repair, see Bardwell, 135 Vt. at 574, 381 A.2d at 1063; and (4) a wholesaler whose employee had inserted a glass thermometer into a banana was required to indemnify the owners of a market after a customer was injured biting into the banana. See Digregorio v. Champlain Valley Fruit Co., 127 Vt. 562, 566, 255 A.2d 183, 186 (1969).
On the other hand, this Court has held that (1) the employer of an employee injured delivering a refrigerator to a private home was not required to indemnify the homeowners for the employee's injuries, which were allegedly caused by the defective condition of the homeowners' basement steps, see Hopper v. Kelz, 166 Vt. 616, 617, 694 A.2d 415, 416 (1997) (mem.); (2) the architect of an apartment complex containing a pond in which two children drowned was not required to indemnify the owner of the complex, who acquiesced *738 in the obvious risk presented by the absence of a fence around the pond, Goulette v. Appleton, 153 Vt. 650, 651, 571 A.2d 74, 75 (1990) (mem.); and (3) the employer of an employee injured while operating a defective side-boom counterweight used on a tractor was not required to indemnify the manufacturer of the defective equipment, notwithstanding the manufacturer's claim that the employer was aware of the defect. See Hiltz v. John Deere Indus. Equip. Co., 146 Vt. 12, 15, 497 A.2d 748, 752 (1985).
In our most recent indemnity case, the owner of a building who had laid floor tiles in the entranceway of the building settled a slip-and-fall lawsuit and then sought indemnification from the tile distributor. We reversed the trial court's summary judgment ruling in favor of the distributor because there remained a material factual dispute over whether the owner had selected the floor tiles or rather merely stated his needs and then relied on the distributor's recommendation as to what type of tile was appropriate for the entranceway. See Chapman, 167 Vt. at 161, 702 A.2d at 135.

III. Quechee Lakes's Claims of Error

A. Procedural Issues

Before reviewing the merits of the trial court's decision, we address the issues Quechee Lakes raises concerning the scope of the superior court's ruling and of the record both in the trial court and here on appeal. Quechee Lakes first complains that because the superior court's summary judgment ruling relied on a position not argued by Helo in its summary judgment motionthat Quechee Lakes had acquiesced in any dangerous condition attributable to Heloit was deprived of a fair opportunity to contest that issue. We find no merit to this argument.
As the superior court noted in denying Quechee Lakes's motion for reconsideration, the thrust of Helo's summary judgment motion was that Quechee Lakes would not be able to prove its claim of implied indemnification, which is governed by § 95 of the Restatement of Restitution. Indeed, in their cross-motions for summary judgment, both parties cited Vermont case law that refers to and relies upon § 95. Thus, Quechee Lakes was plainly on notice that any of the elements set forth in § 95 might prove determinative in the court's summary judgment ruling. In any event, in resolving the parties' motions, the superior court was not restricted to the specific theories relied upon by the parties. See Nagler v. Admiral Corp., 248 F.2d 319, 328 (2d Cir.1957) (court has duty to grant relief required by facts; parties' legal theories might prove helpful, but do not control court's decision). Further, Quechee Lakes had a full opportunity to address the issue of acquiescence in its motion for reconsideration and again on appeal here, where, as noted, our standard of review is the same as the trial court. In short, we are not persuaded that Quechee Lakes was deprived of an opportunity to demonstrate that it had not acquiesced in any dangerous condition present in the women's sauna.
Nor are we persuaded that acquiescence is an affirmative defense that must be proved by Helo. Under § 95, a person who incurs liability as the result of a dangerous condition of land or chattels attributable to the misconduct or negligence of another is entitled to restitution unless the person acquiesced in the continuation of the condition with the knowledge that it posed a danger. As the third-party plaintiff in this action, Quechee Lakes has the burden of establishing its right to equitable indemnification under § 95. Notwithstanding Quechee Lakes's arguments to the contrary, we find no indication that § 95's drafters intended the alleged indemnitor to be required to prove that the indemnitee acquiesced in the continuation of a dangerous condition allegedly caused by the indemnitor. Quechee Lakes has not cited any case law holding that acquiescence is an affirmative defense under § 95, and we decline its invitation to adopt that position here.
*739 Quechee Lakes also faults the trial judge, who presided over both the underlying trial and the summary judgment proceeding in the indemnity action, for relying on evidence from the underlying trial that was not submitted as undisputed facts by the parties in their summary judgment motions. Based on the same argument, Quechee Lakes asks this Court to strike portions of Helo's printed case and brief that refer to evidence from the underlying case not submitted to the trial court along with the parties' summary judgment motions.
Again, we find no merit to these arguments. Our review of the record indicates that both parties encouraged the superior court to review the entire body of evidence presented at the underlying trial before ruling on their summary judgment motions in the indemnity action. In a supplemental memorandum supporting its motion for summary judgment, Quechee Lakes raised the question of whether the evidence at trial proved its independent negligence, which had the effect of attaching the entire transcript of the underlying hearing as an exhibit to its motion. Time and time again, in both their memoranda of law and at oral argument, both parties referred to evidence presented at the underlying trial and urged the superior court to examine it as well. Quechee Lakes cannot now claim that the superior court overstepped its authority in relying on that evidence. Nor can Quechee Lakes prevail on its motion to strike portions of Helo's supplemental printed case and brief.

B. Substantive Issues

Irrespective of the proper scope of the record below, Quechee Lakes contends that there were disputed questions of material fact as to whether it had acquiesced in the continuation of a known dangerous condition. In support of this argument, Quechee Lakes challenges the superior court's finding that in 1973 the Association selected a control panel without a timer for the women's sauna. Quechee Lakes raised this same objection in its motion for reconsideration, to which the court acknowledged that in 1973 Quechee Lakes's predecessor-in-interest selected the control panel for the women's sauna, and that in 1990 Quechee Lakes purchased a control panel with a timer for the men's sauna.
In any event, contrary to Quechee Lakes's assertions, the superior court did not focus primarily on the absence of a timer in the women's sauna. Rather, the court granted Helo summary judgment because few of Anthony White's claims implicated Helo in any way, and to the extent that the absence of safety features contributed to a dangerous condition in the sauna, Quechee Lakes acquiesced in that danger, given that (1) there was no evidence suggesting that the sauna's heating unit or control panel contained hidden dangerous defects unknown to Quechee Lakes; (2) it was undisputed that Helo had taken no part in the design or construction of the sauna itself; and (3) the sauna's features, dangerous or not, had existed unchanged and obvious to Quechee Lakes for over twenty years.
Seeking to avoid summary judgment on the acquiescence issue, Quechee Lakes submitted along with its motion for reconsideration an affidavit of its building superintendent, Erik Roth, containing the following statement: "At no time during my tenure at Quechee Lakes did I become aware of any dangerous condition associated with the sauna." Quechee Lakes now relies heavily on this bare assertion to claim that a disputed issue of material fact exists, even though the assertion is contrary to overwhelming evidence at the underlying trial indicating that Roth and other Quechee Lakes employees were well aware, as well they should have been, of the potential danger posed by saunas. Indeed, evidence at the White trial indicated that Quechee Lakes's own safety committee considered how to make the women's sauna safer, and that Roth and other employees were aware of the committee's recommendations. *740 While we generally accept as true allegations made in opposition to motions for summary judgment, Quechee Lakes cannot survive Helo's summary judgment motion by raising an unsupported assertion that is contrary to the affiant's prior undisputed testimony. See Central Hudson, 202 N.Y.S.2d at 822 (mere conclusory allegations without facts to support them are insufficient to sustain indemnity complaint).
Quechee Lakes contends, however, that the superior court erred in its acquiescence analysis because although the conditions of the sauna were open for all to see, the dangerousness of those conditions was not obvious to ordinary consumers with ordinary knowledge common to the community. This argument is not persuasive. We agree with the trial court that the obviousness of the potential danger created by a superheated room such as a sauna is comparable to the obviousness of the danger posed by an openly accessible pond. See Goulette, 153 Vt. at 651, 571 A.2d at 75 (owner of apartment complex acquiesced to danger created by absence of fence surrounding pond because danger was just as obvious to owner as to architect who designed pond). This is particularly true in this case because Quechee Lakes is not an ordinary consumer but rather the owner of an enterprise operating a health club for the benefit of its members.
Finally, Quechee Lakes argues that Helo's motion for summary judgment should have been denied under Chapman because the issue of whether it was independently negligent should not be governed by the complaint in the underlying action. Unlike in Chapman, however, the superior court in this case relied on all of the evidence presented in the underlying case, not just the complaint. More importantly, the third-party plaintiff in Chapman demonstrated that there was a disputed question of material fact concerning who was responsible for selecting the type of floor tiles that resulted in the patron's injuries. Here, as discussed above, there are no disputed issues of material fact concerning who was at fault as between Helo and Quechee Lakes.
In the underlying trial in this case, there was substantial evidence presented concerning Quechee Lakes's independent negligence in causing the death of Elizabeth White. Quechee Lakes disputed that evidence, but the record supports the superior court's judgment that Quechee Lakes would be unable to show that it was only vicariously liable for her death, and that her death was primarily due to Helo's negligence. See Chapman, 167 Vt. at 160, 702 A.2d at 134 (to prevail on indemnity claim, third-party plaintiff must show that it was only vicariously liable for injuries caused by third-party defendant). Thus, the trial court properly concluded that, as a matter of law, Quechee Lakes was not entitled to the equitable remedy of implied indemnification. See id. at 161, 702 A.2d at 135 (decision in Chapman in no way eases requirements for establishing indemnity).
Affirmed.