Vermont Superior Court
Filed 02/14/25
Orange Unit

VERMONT SUPERIOR COURT

Orange Unit
5 Court Street
Chelsea VT  05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 22-CV-04529

**Carrie Fitzgerald v. Janice Thompson, et al**

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss Cross Complaint (Motion: 7)
Filer:       Justin A. Brown
Filed Date: October 10, 2024

The motion is DENIED.

This is a personal injury case resulting from a water slide ride gone wrong.  Plaintiff Carrie Fitzgerald claims that she injured her lower back when she went down a waterslide at the Thompson Hill Campground & Country Store, LLC (the "Campground") in Orange County, Vermont that caused her back to slam against an object in the pond.

Plaintiff initial filed this action against the Campground and its owner, Janice Thompson. Since then, Plaintiff has amended her complaint to join several co-defendants, including Chief Crushing & Excavation, Inc., who was contracted by the Campground to excavate the designated area for the water slide; Willygoat, LLC, who was contracted by the Campground to install the water slide; and Perfect Settings, Inc., who acted as a subcontractor to Willygoat, LLC, and who actually performed the design and installation work on the water slide.

As part of its answer, Willygoat filed a cross-claim for indemnification against Perfect Settings, arguing that under their contractual relationship, Perfect Settings agreed to manufacture and install the waterslide at the Campground, and that any alleged injuries and damages sustained by Plaintiff were sustained in whole or in part by Perfect Setting's negligence or breach of duty.  This cross-claim is based on a theory of implied indemnification as there is no express indemnification provision in the parties' agreements.  See *Knisely v. Central Vermont Hosp.*, 171 Vt. 644, 646 (2000) (mem.) (discussing the elements of implied indemnification).

Perfect Settings has moved to dismiss Willygoat's cross-claim under V.R.C.P. 12(b)(6) based on two primary arguments.  First Perfect Settings contends that there was no legal relationship

between it and Willgoat that would have "passed on Willygoat's obligations as a seller and broker to Perfect Settings." Second, Perfect Setting contends that because the underlying amended complaint alleges direct liability against Willygoat, the theory of implied indemnification is precluded as it is normally reserved for vicarious liability claims.

## Legal Analysis

*A.      Rule 12(b)(6) Standard*

Plaintiff moves to dismiss Defendant's counterclaims for fraud, fraud in the inducement, and punitive damages on the basis that they claim Plaintiff has failed to plead with particularity a claim upon which relief can be granted. V.R.C.P. 12(b)(6). To determine whether a complaint survives a motion to dismiss, the court assumes the factual allegations in the complaint are true. *Colby v. Umbrella Inc.*, 2008 VT 20, ¶ 5. The court will only grant the motion if there are no facts or circumstances that would grant plaintiff relief. Id. This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11 (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)). Courts rarely grant motions to dismiss for failure to state a claim. *Colby*, 2008 VT 20, at ¶ 5; see also *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 7.

Courts generally disfavor these motions. *Bock v. Gold*, 2008 VT 81, ¶ 4 ("Motions to dismiss for failure to state a claim are disfavored and should be rarely granted."). For these reasons, a party seeking dismissal has a high burden to show that they are entitled to such an initial ruling. *Bock*, 2008 VT 81 at ¶ 4.

*B.      Implied Indemnification*

As the party asserting this equitable claim, Willygoat has the burden of establishing its right to it. Id. The standard for implied indemnification "accrues to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." Id. (quoting *Morris v. American Motors Corp.*, 142 Vt. 566, 576 (1982)). As *Knisely* describes the obligation:

> [I]mplied indemnification is usually appropriate only when the indemnitee is vicariously or secondarily liable to a third person because of some legal relationship with that person or because of the indemnitee's failure to discover a dangerous condition caused by the act of the indemnitor, who is primarily responsible for the condition.

Id. (quoting *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 29 (1999)).

While the Vermont Supreme Court has not defined what types of relationships necessarily qualify as the "legal relationship" that must give rise to implied indemnity, it has recognized that the delegation of a task to a subcontractor or another party through contract is more than sufficient. *Peters v. Mindell*, 159 Vt 424, 429 (1992) (finding the "duty to perform with care, skill, reasonable expedience, and faithfulness" that is implied in all contracts is sufficient to create the legal relationship necessary for implied indemnification). In *Peters*, a contractor who subcontracted out the entire design and installation of a septic system was entitled to implied indemnification when the system failed for the homeowner. Id. The sole exception to in this line of case arises when the delegating party retains a nondelegable obligation to oversee and ensure the quality of the work done. See, e.g., *Knisely*, 171 Vt. at 647 (finding that a hospital has a nondelegable duty to provide a safe workplace).

In this case. Willygoat and Perfect Settings entered a contract wherein Perfect Settings agreed to manufacture and install a playground/slide on the Campground's premises. The facts, at this stage, indicate that Willygoat's primary role in this project was to act as a type of broker or procurement agent to connect Perfect Settings as the manufacturer/installer with the Campground as purchaser/user. The actual construction and installation were delegated entirely to Perfect Settings. While Plaintiff seeks to hold Willygoat equally liable for this negligence, the nature of such a claim is necessarily one of vicarious liability. *Buxton v. Springfield Lodge No. 679, Loyal Order of Moose, Inc.*, 2014 VT 52, ¶ 13. Based on the fact that Willygoat had a legal relationship with Perfect Settings and to the extent that the claim concerns only vicarious liability, there is nothing to prevent, as a matter of law, Willygoat from claiming implied indemnity against Perfect Setting. At this time, the Court finds no evidence at this time to support the proposition that Willygoat's role in this process constituted a non-delegable duty as a matter of either fact or law. There has been no evidence that Willygoat held itself as overseeing or playing a role in the actual design or installation. For these reasons, the claim for implied indemnification survives Perfect Setting's challenge and motion to dismiss.

The court also finds no support for Perfect Settings' second argument concerning the allegations of direct liability currently claimed by Plaintiff against Willygoat. Perfect Settings cites *Carleton v. Killington/Pico Ski Resort Partners, LLC*, No. 2:24-CV-20, 2024 WL 3963880, at *5 (D. Vt.

Aug. 28, 2024) (slip. op.), but its analysis of this decision omits a crucial point. The defendants in *Carleton* did not seek to apply the doctrine of implied indemnification against a subcontractor or similar contractual partner but against the end-user of the ride. Id. at *6. The federal magistrate found that Vermont law offered "no right of indemnification where the plaintiff's underlying complaint alleged that the third-party plaintiff seeking indemnification . . . was actively at fault for the plaintiff's injuries." Id. The court's point there was, however, that the "proposed third-party complaint [did] not allege vicarious liability based on any agent-principal, employer-employee, or other relationship." Id. at *5.

Defendant, however, raises a point that while not expressly raised in Plaintiff's filings may be reasonably inferred as this case progresses. This is the question of what liability Plaintiff may ultimately seek against Willygoat. In this respect, the Court can foresee three variations, all of which may become applicable in the present case.

In the first instance, the evidence to this point only supports a vicarious liability claim against Willygoat based on its role as the entity hired by the Campground to construct and install the slide, tasks that it delegated entirely to Perfect Settings. In such a case, if no further facts developed that altered this delegation and assignment, then Willygoat's implied indemnification claim would be appropriate and permitted to move forward.

In the second instance, the evidence as developed, may indicate that Willygoat was separately and directly negligent in its role as a broker and middleman between the Campground and the universe of potential contractors from which it chose Perfect Settings. The Court could envision such a claim as arising based on a failure of due diligence in reviewing and selecting Perfect Settings—a type of negligent hiring. Such a duty would be inherently nondelegable to Perfect Standard and would qualify as direct, rather than vicarious, liability because it would concern an action completely in Willygoat's control and to which it could not claim a right or ability to delegate. If established, this type of liability would render implied indemnification improper because it would effectively create a direct liability situation where Willygoat would be liable for its own negligent actions. When there is a mixture of vicarious and direct liability, the party seeking implied indemnification is ineligible. *Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt. 12, 14–15 (1985). This is because indemnification shifts the entire loss from one party to the other and cannot be applied like a contribution provision where certain liabilities are parsed out. Id.; see also *White*, 170 Vt. at 29 (citing *Fireside Motors, Inc. v. Nissan Motor Corp.*, 479 N.E.2d 1386, 1389 (Mass. 1985)).

In reviewing Plaintiff's most recently amended complaint, it appears that Plaintiff anticipates such a set of facts, but her complaint does not break this theory out into a separate or specific cause of action, instead she makes a single claim against Willygoat for negligence regarding its liability regarding the construction and install work that it did. If both direct and vicarious liability are asserted and established, then the Court would be obligated to dismiss any implied indemnification claims as Willgoat could no longer claim to be without active fault and obliged to cover the negligence of another. *White*, 170 Vt. at 29.

The third possible instance is the development of the record to demonstrate some degree of direct liability for the construction and installation process. It is not clear from the record at this stage whether Willygoat may have played a more significant role in the oversight, construction, and installation of the slide. To the extent that Willygoat can be shown to be more involved, the more likely the Court would be to revisit this determination of implied indemnification as the more likely it would be that Willygoat was involved to some degree of active fault. In such a case, the facts would render Willgoat less of a third-party drawn into litigation by the acts or omission of another over which Willygoat exercised little control or oversight, and more like a tortfeasor who played and continued to play a more substantive role. If the facts, as they are developed, begin to show the WIllygoat played a hands-on or day-to-day role, then the less likely the Court would be to allow indemnification against such direct involvement with the alleged underlying breaches. See *Morris*, 142 Vt. at 576 (noting that implied indemnity may only flow to a party without active fault).

As of today, however, these three options are not developed to a point where one can be shown to be controlling or definitive. Given this uncertainty and the high bar for a motion to dismiss, the Court finds that dismissing the claim of implied indemnification at this stage is premature and should be denied at this time with the understanding that it may be renewed as the facts of these claims become developed and flushed out by discovery.

## ORDER

For the foregoing reasons, Perfect Settings' Motion to Dismiss is **Denied**.

Electronically signed on 2/13/2025 8:02 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge