# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014

(Submitted:   November 5, 2014                    Decided: November 12, 2015)

Docket No. 13-4566

------------------------------------------------------------X

AEYIOU P. KAZOLIAS, KEVIN H. ROXBY, and ROBERT C. SWINGLE,

*Plaintiff-Appellants*,

v.

IBEW LU 363 AND JOHN MARAIA, as Business Manager of IBEW LU 363,

*Defendant-Appellees*, and

LIGHTMORE ELECTRIC ASSOCIATES, INC. AND ANDREW H. POPIK, as President of
LIGHTMORE ELECTRIC ASSOCIATES, INC.,

*Defendants.*

------------------------------------------------------------X

Before: LEVAL, LYNCH, and DRONEY, *Circuit Judges*:

Plaintiffs, who are three members of an electrical union, appeal from the grant of summary judgment by the United States District Court for the Southern District of New York (Owen, *J.*) in favor of the defendant union (and one of its officers) on a variety of claims under the Age Discrimination in Employment Act of 1967 (ADEA) and the Labor-Management Reporting and Disclosure Act (LMRDA), among others. We vacate the judgment and remand on certain of Plaintiffs' ADEA claims because the district court erroneously held that a union official's expressions of resentment against plaintiffs for their administrative complaints against the union could not evince retaliatory intent prior to the time of the resentful statements. We affirm the court's judgment in all other respects.

ROBERT N. FELIX, Law Offices of Robert N. Felix, Esq., New York, NY, *for Plaintiff-Appellants*.

ROBERT T. MCGOVERN (Paula Clarity, *on the brief*), Archer, Byington, Glennon & Levine LLP, Melville, NY, *for Defendant-Appellees.*

LEVAL, *Circuit Judge*,

Plaintiffs Aeyiou Kazolias, Kevin Roxby, and Robert Swingle ("Plaintiffs"), members of an electrical union, appeal from the judgment of the United States District Court for the Southern District of New York (Owen, *J.*) dismissing a variety of claims against Plaintiffs' union (and one of its officers), which alleged age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.*, violations of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 411 *et seq.*, the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141 *et seq.*, and the union's duty of fair representation (DFR), *see Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 79 (1989), as well as unlawful retaliation for complaints. As for certain claims under the ADEA alleging retaliation for complaints of age discrimination, we vacate the judgment and remand because the district court erroneously ruled that a union official's expressions of resentment of Plaintiffs' claims of age discrimination could not evince retaliatory animus existing prior to the time the resentful statements were made. We affirm the district court's grant of summary judgment in all other respects.

# BACKGROUND

**A. Facts**

Plaintiffs are three journeymen wiremen who are members of the International Brotherhood of Electrical Workers Local Union 363 ("the union"). The union refers its members for jobs with employers who are parties to the union's Collective Bargaining Agreement (CBA) based on referral rules contained in the CBA and additional rules promulgated by the union. Members who seek job referrals sign an out-of-work list to indicate their availability for employment. With certain exceptions, members are referred for job openings chronologically based on when they signed the out-of-work list.

In December 2007, Plaintiffs were referred for a job with Defendant Lightmore Electric Associates, Inc. ("Lightmore"). Lightmore terminated Plaintiffs from the job in January 2008. Plaintiffs filed a series of grievances with the union, asserting that Lightmore failed to comply with safety protocols and with CBA provisions regarding age discrimination. A union representative investigated the grievances and secured certain concessions from Lightmore.

Plaintiffs, however, were unhappy with the outcome of the grievance procedure. In June 2008, Plaintiff Roxby filed unfair labor practice charges with the National Labor Relations Board (NLRB), alleging, in part, that (1) the union failed to respond adequately to Plaintiffs' safety-related grievances, and (2) the union retaliated against Plaintiffs by threatening them with disciplinary action and denying them job referrals. The NLRB dismissed the complaint. On September 15, 2008, Roxby and Kazolias filed charges of

3

age discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

At the union's monthly meeting on February 24, 2009, the union's business manager, John Maraia, complained about Plaintiffs' charges. As recorded in the "Regular Monthly Meeting Minutes," he said,

> I am tired of the 3 or 4 members trying to bring down this Local with their petty claims of workmanship on jobs we are doing. . . . You will be brought up on charges. I have fought too hard for these jobs that we are getting to have a few assholes screw it up. . . . We are in terrible times - no work, anti-union sentiment - and I am fighting all of these fights and will continue. And do not be mistaken, I will fight the few members who are trying to hurt this organization. I will use everything in the CBA, Constitution and By-Laws to stop this vendetta.
> .

Maraia made similar statements at a meeting in May 2009.

In May 2009, all three Plaintiffs filed further charges with the EEOC alleging age discrimination and retaliation. Kazolias and Roxby were issued right-to-sue letters. Swingle's charges were rejected as untimely, but in July 2009, Swingle filed another EEOC charge and, this time, was issued a right-to-sue letter.

Plaintiffs assert that throughout the relevant period they were improperly denied job referrals by the union, and have identified numerous instances in which someone with lower priority on the out-of-work list was referred for a job instead of Plaintiffs. The union does not dispute that these referrals went to members who had signed the list after Plaintiffs, but asserts that each referral was made pursuant to an established exception to the chronological referral rule in accordance with union procedures.

**B. Procedural History**

Proceeding pro se, Plaintiffs filed suit in August 2009 against the union and Maraia (collectively, "Defendants"). Plaintiffs filed an Amended Complaint on August 25, 2010. Plaintiffs later obtained counsel but did not further amend their complaint.

The Amended Complaint included a variety of charges. We concern ourselves in this opinion with Plaintiffs' allegations that Defendants (1) retaliated against Plaintiffs for engaging in speech protected by the LMRDA; (2) retaliated against Plaintiffs in violation of the ADEA for their filing of age-discrimination complaints with the EEOC; and (3) breached the union's duty of fair representation of its members.

Defendants moved for summary judgment in January 2012, after the close of discovery. Along with their motion, Defendants submitted an affidavit of Rosario Olivieri, the union's referral agent. Olivieri's affidavit describes the union's job-referral procedures and avers that each referral challenged by Plaintiffs was made in accordance with established union procedures. For example, Olivieri explains that some referrals were properly made out of order because the employer requested workers with a particular certification or specialty that Plaintiffs did not have.

Magistrate Judge Lisa Margaret Smith issued a Report and Recommendation (R&R) recommending that the district court grant judgment for Defendants on most claims. Over Plaintiffs' objections, the district court adopted most of the R&R but granted summary judgment for Defendants on additional claims as well. Plaintiffs then

voluntarily dismissed the surviving claims. The district court entered a final judgment for Defendants, and Plaintiffs appealed.

**DISCUSSION**

A grant of summary judgment is reviewed de novo, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). In this appeal, Plaintiffs raise approximately twenty challenges to the district court's judgment. One, we believe, meritoriously points to an error in the district court's reasoning, which requires that we vacate a part of the judgment. Another raises a substantial issue as to the scope of the free-speech protections provided by the LMRDA. The great majority of the Plaintiffs' numerous contentions, however, lack any substantial merit. In our discussion below, we focus on the more reasonable contentions and give little or no attention to manifestly insubstantial arguments.

**A. ADEA Claims**

Plaintiffs contend that the district court erred in dismissing claims based on alleged retaliatory animus accruing prior to Maraia's overtly retaliatory remarks at a February 2009 union meeting. We agree.

Plaintiffs allege that after they filed their ADEA-based age-discrimination complaints with the EEOC, Defendants took various retaliatory actions, including denying them job referrals. The magistrate judge acknowledged that Maraia's comments

supported an inference that the union harbored retaliatory animus against Plaintiffs for their EEOC age discrimination complaints *after* Maraia made his comments on February 24, 2009, but concluded that Maraia's remarks "provide insufficient evidence of the union's intent" *prior* to the time Maraia made the remarks. The district court adopted this reasoning.

This was error. Maraia's remarks constituted evidence that, at the time he spoke, he (and consequently the union) harbored retaliatory animus against Plaintiffs for their complaints. A jury could reasonably infer that Maraia's resentment against Kazolias and Roxby was not born at the instant he expressed it, but had been brewing ever since they brought their age discrimination charges in September 2008.[1]

The magistrate judge found inadequate several of the union's explanations for passing over Plaintiffs for job referrals between September 15, 2008 and February 24, 2009. To the extent that the magistrate judge's only stated reason for her recommendation of summary judgment was that the denials of referral occurred prior to Maraia's comments, we vacate the judgment and remand for further consideration.[2]

---

[1] On appeal, Swingle challenges only referrals made in 2008, prior to his EEOC complaint, which he made in 2009, and in 2011, which were not identified in the Amended Complaint, but were first raised in Plaintiffs' opposition to Defendants' motion for summary judgment. Our ruling does not touch the district court's dismissal of these claims. The first category could not have been in retaliation for Swingle's complaints as he had made no complaint. The 2011 referrals are not properly a part of this case, as they were not pleaded.

[2] This ruling does not affect referrals prior to the February 2009 union meeting for which the magistrate judge gave additional reasons justifying the grant of summary judgment. As to these, Plaintiffs have failed to show a basis for rejecting the magistrate judge's additional reasons.

Kazolias also contests the district court's grant of summary judgment on some of his ADEA claims that do not involve job referrals. *See* Appellants' Br. 61-62. The magistrate judge gave reasoned analyses why these claims should be dismissed. Kazolias's objections in the district court consisted of only recitations of facts without explanation why those facts undermined the magistrate judge's conclusions. The district court adopted the magistrate's recommendation in the absence of any real argumentation to the contrary. Plaintiffs repeat their error here, insisting that their claims are "jury issues" without explanation of how their arguments would undermine the judgment. *Id.* at 62. We affirm the judgment on these claims.

**B. LMRDA Claims**

Plaintiffs allege that Defendants violated Title I of the LMRDA by denying them equal access to job referrals in retaliation for their exercise of free-speech rights guaranteed by that statute. Title I of the LMRDA, titled "Bill of Rights of Members of Labor Organizations," guarantees union members certain rights, including rights to freedom of speech and assembly in the context of union membership. Title I states, in relevant part:

(1) Equal rights

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; *and to express any views, arguments, or opinions*; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(1)-(2) (first emphasis added). The LMRDA creates a private right of action for "[a]ny person whose rights secured by [Title I] have been infringed by any violation of [Title I]." *Id.* § 412.

Plaintiffs allege that Defendants violated these provisions by denying them job referrals in retaliation for filing grievances with the union and complaints with the NLRB, EEOC, and the federal court. Defendants argue that Plaintiffs have failed to state a viable claim under the LMRDA because Plaintiffs' complaints do not fall within the ambit of speech protected by the LMRDA. We agree.

The LMRDA was enacted "to encourage democratic self-governance in unions" as well as "to correct widespread abuses of power and instances of corruption by union officials." *See Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 44 (2d Cir. 1989). In interpreting Title I's protections, the Supreme Court has emphasized Title I's concern with safeguarding union democracy. *See, e.g.*, *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354 (1989) ("LMRDA's basic

objective [is] 'to ensure that unions are democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections.'" (internal alterations omitted) (quoting *Finnegan v. Leu*, 456 U.S. 431, 456 (1982))); *United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski*, 457 U.S. 102, 112 (1982) ("Congress adopted the freedom of speech and assembly provision in order to promote union democracy. It recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." (internal citations omitted)).

Plaintiffs point to the broad language of Title I, which states that union members have the right "to express *any* views, arguments, or opinions." 29 U.S.C. § 411(a)(2) (emphasis added). But the surrounding clauses of the provision plainly reflect a focus on union governance. *See id.* (establishing members' rights "to meet and assemble freely with other members," and "to express at meetings of the labor organization [one's] views, upon candidates in an election of the labor organization or upon any business properly before the meeting"). Accordingly, this court has interpreted Title I to protect speech that concerns union governance and union affairs. *See Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998) (explaining that "Title I . . . guarantees to union members the right to . . . express any views, arguments, or opinions concerning candidates and union policies," and "protects union members from direct interference with union

membership rights in retaliation for their expression of opinions concerning union activities" (internal quotation marks omitted)).

Relying on the text and purpose of the LMRDA, and drawing an analogy to First Amendment retaliation claims by government employees, the Fourth Circuit has recently described the test of Title I's coverage terms as "whether the speech touches in some way the Act's overarching concern for union democracy, or whether it is of purely tangential import to union governance." *Trail v. Local 2850 UAW United Def. Workers of Am.*, 710 F.3d 541, 547 (4th Cir. 2013). The plaintiff in that case alleged that her union violated the free speech provisions of the LMRDA by, inter alia, failing to support her in her employment dispute in retaliation for her having reported an incident in which she observed union officers viewing pornography on union computers in the union office on union time. *Id.* at 544, 547. The Fourth Circuit ruled against her, concluding that her speech was beyond the coverage of the Act. *Id.* at 547. Noting that the plaintiff did not address her complaints to the general membership or "raise[] issues with respect to union policies," the court reasoned in part that such an instance of minor misconduct by union officers was not of sufficient concern to the union membership that her reporting it constituted speech protected by the LMRDA. *Id.* at 547-48.

Similarly, in *Hylla v. Transportation Communications International Union*, the Eighth Circuit expressed the view that "[Title I's] protection is limited to speech that relates to the general interests of the union membership at large." 536 F.3d 911, 917

(8th Cir. 2008). The plaintiff in *Hylla* claimed he had been dismissed from his position as an officer in the union primarily in retaliation for his having expressed resentment of conduct towards him by a superior in the union hierarchy. *Id.* at 916. The court ruled against him. Contrasting the personal nature of his grievance with the circumstance in *Lynn*, in which a union officer was removed from his post by reason of his outspoken opposition to a proposed increase in union dues, the Eighth Circuit ruled that Hylla's speech was not of sufficient concern to the union membership as a whole to come within the protection of the LMRDA. *Id.* at 920.

We agree with the Fourth and Eighth Circuits that Title I's protections are limited to speech of significant concern to the union membership as a whole. We believe that whether the speech comes within the protections of Title I turns in part on the subject matter of the speech and in part on the nature of the speech and what it seeks. The more the speech relates to matters of significant interest to the membership as a whole, and the more it seeks to influence union policies or actions with respect to such issues, the more such speech is likely to come within the scope of Title I. In contrast, the more the speech is limited to asserting a personal grievance of the plaintiff and the more it seeks merely personal relief for the plaintiff, as opposed to advocacy for changes that would affect the membership as a whole, the less likely that the particular speech comes within the scope of protection of Title I.

We have no doubt that the administration of a union's hiring hall is a subject of vital interest to the full membership, and that in certain circumstances complaints

about the improper administration of the hiring hall can constitute speech that is protected from retaliation by Title I. On the other hand, we do not think that every personal grievance premised on an allegation of an inappropriate job referral necessarily qualifies as protected speech under Title I. In this case, in making their complaints to the NLRB and the EEOC, Plaintiffs sought only redress for their personal grievances and made no attempt to publicize their grievances among the membership in an effort to change union practices. They sought only individualized personal relief. There is no indication in the record that an offer of personal compensation would not have been sufficient to satisfy Plaintiffs entirely, without any effect on union practices. The LMRDA was designed to protect the integrity of union governance, not to turn "nearly every criticism by a union member regarding an official's conduct . . . into a federal case." *Trail*, 710 F.3d at 548.[3]

For these reasons, we affirm the district court's judgment with respect to Plaintiffs' claims of retaliation in violation of the LMRDA.

**C. Duty of Fair Representation Claims**

Plaintiffs contend that the district court erred in granting summary judgment against them on claims that the union violated its duty of fair representation (DFR) in denying them job referrals. They argue that the district court should have applied the rule of the D.C. and Ninth Circuit Courts of Appeals, which holds that unions

---

[3] In any event, if Plaintiffs can show that the union's actions toward them violated the ADEA because the actions constituted retaliation for their age discrimination claims, they are entitled to relief on that ground.

13

operating an exclusive hiring hall are under a heightened duty of fair representation.

*See Lucas v. NLRB*, 333 F.3d 927 (9th Cir. 2003); *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29 (D.C. Cir. 1995).

The district court rejected many of Plaintiffs' claims that denials of job referrals constituted breaches of the union's DFR, based on the conclusion that those denials were consistent with the union's ordinary operating rules. Plaintiffs contend that, if the district court had applied the heightened duty standard espoused by the D.C. and Ninth Circuits for hiring hall referrals, it would have ruled in Plaintiffs' favor. They have, however, neither identified which referrals, nor offered explanations why use of that standard would have affected the district court's conclusion that, in each particular instance, the union acted in accordance with its rules. We therefore have no need to decide whether courts in this Circuit should employ the "heightened duty" standard. Plaintiffs have not shown that use of that standard would have made a difference.

Plaintiffs also challenge the district court's rejection of many job-referral based DFR claims as untimely under the applicable statute of limitations. They argue that all of their DFR job referral claims should be found timely under a "continuing violation" theory, because the "DFR violations have been repeated continuously for nearly four years." Appellants' Br. at 36. We disagree. The magistrate judge correctly concluded that, even assuming that a continuing violation theory can apply in the DFR context, each improper job referral is properly characterized as a "discrete act" under the

Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002). Denials of job referrals do not present the problems of a hostile work environment claim, as to which, even though individual acts of hostility do not give grounds for relief, the cumulative effect of a series of acts creates an actionable harm. Because each job referral wrongfully denied in violation of the DFR is individually actionable, there is no basis for extending the statute of limitations to cover denials of referral for which the time for suit has expired.[4]

**D. Procedural Contentions**

1) Plaintiffs argue that the district court erred in denying their request, pursuant to Federal Rule of Civil Procedure 56(d), to reopen discovery to allow them to depose Rosario Olivieri, the union's referral agent. Their contention has no merit. Although explicitly invited by the magistrate judge to do so, Plaintiffs failed to make an application supported "by affidavit or declaration" that they could not "present facts essential to justify their opposition" as required by Rule 56(d).

In support of summary judgment, Defendants submitted an affidavit of Olivieri in which Olivieri described the union's referral procedures and discussed Plaintiffs' challenged job referrals. In Plaintiffs' statement of disputed and undisputed facts submitted in opposition to Defendants' motion, they said they could neither confirm

---

[4] This is not to say that a denial of referral no longer within the statute of limitations cannot serve as "background evidence" of the sort described in Federal Rule of Evidence 404(b)(2) supporting a timely hostile work environment claim or a timely claim relating to a later denial. *Morgan*, 536 U.S. at 113. We express no views on this question beyond noting that Plaintiffs have not argued it.

15

nor deny Defendants' assertions made on the basis of Olivieri's affidavit, and requested a continuance in order to depose Olivieri. The magistrate judge denied Plaintiffs' request on the ground, inter alia, that they had not supported their request as Rule 56(d) requires. The magistrate judge, however, specified that the denial was without prejudice to renewal in proper form, and gave Plaintiffs more than two months to do so. Plaintiffs took no further action before the magistrate judge to secure this relief. Instead, after the magistrate judge submitted her Report and Recommendation to the district court recommending a partial grant of summary judgment for Defendants, Plaintiffs objected to it based on the magistrate judge's denial of their request.

Rule 56(d) expressly requires the nonmoving party who seeks further discovery in these circumstances to make a "show[ing] by affidavit or declaration" of the reasons for needing the relief. "[T]he failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994). Here, the magistrate judge gave Plaintiffs fully adequate opportunity to meet the requirements of the Rule by submitting their request in proper form. The district court did not abuse its discretion in rejecting Plaintiffs' objection to the magistrate's recommendation and refusing to reopen discovery.

2) Plaintiffs also contend that the district court erred in allowing Defendants to submit additional evidence in support of their objections to portions of the R&R that

16

recommended denial of summary judgment as to certain claims. With their objections to the R&R, Defendants submitted an additional affidavit of Olivieri that further discussed the job referrals. Plaintiffs contend that the district court erred by considering new evidence not submitted to the magistrate judge.

While Plaintiffs cite instances in which district courts have declined to receive new evidence in similar circumstances, they cite no authority for the proposition that a district court may not receive new evidence. To the contrary, the governing statute, 28 U.S.C. § 636(b)(1), expressly provides that the district court in these circumstances "may also receive further evidence." *See also* Fed. R. Civ. P. 72(b)(3) ("The district judge may . . . receive further evidence . . . ."); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) ("The district court ha[s] discretion to consider evidence that ha[s] not been submitted to the Magistrate Judge."). There is no merit to Plaintiffs' contention.

\*\*\*

We have considered the Plaintiffs' other arguments and find them meritless.

## CONCLUSION

The judgment is VACATED and the matter REMANDED with respect to the ADEA claims to which the magistrate judge's recommendation of dismissal was based solely on the fact that the referral occurred prior to the February 2009 union meeting. In all other respects the judgment is AFFIRMED.