| |
|---|
| **Alaimo v New York State Nurses Assn.** |
| 2024 NY Slip Op 31206(U) |
| April 9, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 150879/2021 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. SHLOMO S. HAGLER** | **PART** | **17** |

*Justice*

-------------------------------------------------------------------X

TERRY ALAIMO

                                Plaintiff,

                        - v -

NEW YORK STATE NURSES ASSOCIATION,

                                Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 150879/2021 |
| **MOTION DATE** | 01/27/2022 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 13, 14, 15, 16, 17, 18, 21, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 38, 46

were read on this motion to/for _____DISMISS_____.

In this whistleblower protection and defamation action, plaintiff, Terry Alaimo, alleges that she was defamed and wrongfully terminated after she filed a formal whistleblower complaint regarding improper conduct and financial malfeasance of New York State Nurses Association's ("NYSNA") officers. Defendant moved to dismiss, pursuant to CPLR 3211 (a) (7), for failure to state a cause of action.

On October 21, 2022, this court dismissed four counts of defamation after submission of papers and oral arguments, holding that plaintiff's claims failed to survive the rigorous standards for pleading defamation by implication per se and defamation by implication. The only remaining claim is one for retaliatory discharge in violation of New York's Not-For-Profit Corporation Law Section 715-b (NPCL 715-b).

## BACKGROUND

The facts are taken from plaintiff's complaint (NYSCEF Doc No. 2) except as otherwise indicated.

150879/2021   ALAIMO, TERRY vs. NEW YORK STATE NURSES
Motion No. 001

Page 1 of 11

Plaintiff Terry Alaimo is a former NYSNA employee. From 2015 to 2019, Plaintiff was the Area Director for the Mt. Sinai hospital system. In this position, plaintiff participated in the negotiation and enforcement of collective bargaining agreements with Mt. Sinai and supervised a staff of six NYSNA employees.

NYSNA is a labor organization representing registered nurses in the State of New York, including registered nurses at the Mt. Sinai hospital system. NYSNA is a non-profit corporation.

Plaintiff was hired in 2013 by then-Executive Director Jill Furillo. By 2015 she was promoted by Furillo to the position of Area Director for the Mt. Sinai hospital system, the position she held at the time of her discharge. In 2018, plaintiff and NYSNA President Judy Sheridan-Gonzalez disagreed over the ratification of bargaining agreements being negotiated between the hospital systems.

In 2019, plaintiff learned that formal charges were filed against Sheridan-Gonzalez and then-Treasurer, Pat Kane, by 15 members of the union. Plaintiff was not a signatory to the complaint because she was not a member of NYSNA. However, plaintiff states that she participated in the "reform faction" that emerged after the formal charges were filed, by helping to draft revisions to the NYSNA by-laws (*id.* ¶ 49). Ultimately, the reform faction was unsuccessful in their effort to revise the by-laws, and both Sheridan-Gonzalez and Kane retained their respective positions.

In December 2019, plaintiff filed a formal whistleblower report with the NYSNA Chief of Staff and NYSNA Director of Human Resources against Sheridan-Gonzalez and Kane. She alleged that Kane, while she was Treasurer, committed "gross campaign finance violations," including receiving a salary without working, and that Sheridan-Gonzalez had received an

**150879/2021 ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No. 001**

**Page 2 of 11**

2 of 11

[* 2]

improper $15,000 loan from NYSNA and also had been receiving a full-time salary, in violation of the NYSNA by-laws (*id.* ¶ 65).

Also in December 2019, Ms. Kane was installed as the new Executive Director after the resignation of Ms. Furillo. A month later, in January 2020, plaintiff was issued a final written warning regarding performance issues.

In March 2020, at the beginning of the COVID-19 pandemic, plaintiff repeatedly clashed with Diana Torres, a Mt. Sinai nurse, NYSNA member, and former member of the Mt. Sinai Executive Committee, concerning NYSNA's efforts to obtain personal protective equipment ("PPE") for its members. Plaintiff states that Torres "continually bombarded" her and her staff with "complaints about the lack of adequate PPE" (*id.* ¶ 83).

On March 18, 2020 plaintiff wrote a profanity-laden email to Sheridan-Gonzalez, Kane, and NYSNA Field Director Eric Smith, stating that Torres was "full of shit" and that she should "shut the [ ] up" (*id.* ¶¶ 129, 132, 133). On April 6, 2020, NYSNA sent plaintiff a letter stating that the March 18 email violated NYSNA's Code of Conduct and that further disciplinary action would be forthcoming (*id.* ¶¶ 106, 137). Thereafter, on May 14, 2020, NYSNA terminated plaintiff's employment.

## ARGUMENTS

Defendant argues that the whistleblower retaliation claim against NYSNA must be dismissed because NPCL 715-b is preempted by Labor Management Reporting and Disclosure Act ("LMRDA") (29 USC § 401 et seq., as added by Pub L 86-257, 73 US Stat 519). NYSNA contends that the state law, created to protect non-profit employees from retaliation for filing whistleblower reports, conflicts with the federal law, enacted to protect and promote union democracy, and that as such, the state law must give way to the federal, pursuant to the

**150879/2021  ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No. 001**

Page 3 of 11

3 of 11

[* 3]

Supremacy Clause of the U.S. Constitution. In addition, defendant argues that NPCL 715-b does not create a private cause of action.

Plaintiff in opposition argues that there is no binding authority that requires a finding of LMRDA preemption, that the cases cited by defendant are distinguishable, especially in that they were decided after discovery was completed on summary judgment, and that there is a private cause of action pursuant to NPCL 715-b.

## DISCUSSION

### A. Standard

On a motion brought under CPLR 3211 (a) (7), the court must "accept the facts as alleged in the complaint as true, accord plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). The court need not extend such consideration to bare legal conclusions or claims that are contradicted by documentary evidence (*Myers v Schneiderman*, 30 NY3d 1, 11 [2017], *rearg denied* 30 NY3d 1009 [2017]). Dismissal is warranted where "the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (*Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 142 [2017]).

### I. Federal Preemption of State Law

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (US Const, art VI, cl 2). Thus, it follows that "Congress has the power to preempt state law" (*Arizona v United States*, 567 US 387, 399 [2012]). In every preemption case, accordingly, we ask whether Congress intended to exercise this important and sensitive power: "the purpose of Congress is

**150879/2021   ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No. 001**

[* 4]

the ultimate touchstone" (*Wyeth v Levine*, 555 US 555, 565 [2009] [internal quotation marks and citation omitted]).

As the Supreme Court has instructed, "in all pre-emption cases ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (*id.* [internal quotation marks and citation omitted). Thus, the party asserting that federal law preempts state law bears the burden of establishing preemption (*see id.* at 569; *Silkwood v Kerr-McGee Corp.*, 464 US 238, 255 [1984]).

The burden of establishing preemption is heavy: "[t]he mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d 219, 241 [2d Cir 2006]). Federal law does not preempt state law under the preemption analysis unless "the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together" (*id.* [internal quotation marks omitted]). However, "with regard to labor disputes, federal preemption of state law is the rule, not the exception" (*Bill Johnson's Restaurants, Inc. v N.L.R.B.*, 461 US 731, 753 [1983] [J. Brennan, concurring]).

A. Labor-Management Reporting and Disclosure Act

In 1959, Congress enacted the LMRDA in order to address the problems of racketeering, crime, and corruption in the labor movement (29 USC §§ 401-531; *see* S Rep 187, 86th Cong, 1st Sess 7-8, reprinted in 1959 US Code Cong & Admin News at 2318, 2323). The purpose of the LMRDA is twofold: "to encourage democratic self-governance in unions …," (*Kazolias v IBEWLU 363*, 806 F3d 45, 51 [2d Cir 2015] [citation and quotation marks omitted]) and via Title I of the LMRDA, "to protect[] speech in the context of the union democratic process, i.e.

**150879/2021 ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No. 001**

**Page 5 of 11**

political speech primarily addressed to other union members, rather than free speech at large" (*Sampson v District Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 2012 WL 4471535 at *3, 2012 US Dist LEXIS 141822, *10 [SD NY Sept 27, 2012, No. 10 CV 8120 LAP] [citation and quotation marks omitted]). In addition, the Supreme Court has held that the basic objective of the LMRDA is to ensure "that unions are democratically governed and responsive to the will of the membership, which must be free to discuss union policies and criticize the leadership without fear of reprisal" (*Sheet Metal Workers' Intl. Assn. v Lynn*, 488 US 347, 348 [1989]).

Defendant argues that LMRDA's purpose includes protecting the right of elected union officials to hire and fire union staff. In support of this contention, defendants cite to *Finnegan v Leu* (456 US 431, 431 [1982]), and its progeny. While *Finnegan* was not a preemption case, it is often cited to articulate the rationale that status as a union employee or appointed officer is not a membership right within a union and is not protected by the LMRDA, and therefore those employees or appointed officers cannot maintain an action for violation of their right to freedom of speech as guaranteed by Title I of LMRDA. In *Finnegan*, a union's appointed business agents were discharged by the newly elected union president, following his election over the candidate supported by the business agents. The Court held that in passing the LMRDA, Congress could not have meant to "restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own," (*id.* at 441) and expressed doubt that the LMRDA's protections of membership rights extended beyond "rank-and-file union members" to appointed union officers or union employees (*id.* at 436-437). In particular, the *Finnegan* court stated:

> "No doubt this poses a dilemma for some union employees; if they refuse to campaign for the incumbent they risk his displeasure, and by supporting him risk the displeasure of his successor. However, in enacting Title I of the Act, **Congress simply was not concerned with perpetuating appointed union employees in**

**150879/2021 ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No. 001**

Page 6 of 11

**office at the expense of an elected president's freedom to choose his own staff.**
Rather, its concerns were with promoting union democracy, and protecting the
rights of union members from arbitrary action by the union or its officers"
(*id.* at 442 [emphasis added] *cf. Sheet Metal Workers' Intl. Assn.*, 488 US at 352-356, [*Finnegan*

rationale does not apply to LMRDA Title I claims of elected union officials]).  The Court left

open the question of whether "a different result might obtain in a case involving

nonpolicymaking and nonconfidential employees" thus limiting its holding to policymaking and

confidential positions (*id.* at 441, n 11).

Following *Finnegan*, the California Court of Appeal, in *Tyra v Kearney* (153 Cal App 3d

921, 925-927 [Ct App, 4 Dist, Div 3 1984]), expressly relied upon *Finnegan* in finding that the

LMRDA preempted a state law wrongful discharge suit of an appointed union business agent,

who had been fired by an elected union official that the business agent had challenged in a union

election.  The *Tyra* court noted the "paradox in denying a wrongful termination cause of action

to [a union employee,] yet allowing it for private sector employers," but felt "compelled to

follow the dictates of the Supreme Court" (*id.* at 926 n 6).

In 1989, the Supreme Court revisited its *Finnegan* holding in *Sheet Metal Workers' Intl.*

*Assn.* (488 US at 354-355), and confirmed that

> "the basis for the *Finnegan* holding was the recognition that the newly elected
> president's victory might be rendered meaningless if a disloyal staff were able to
> thwart the implementation of his programs. While such patronage-related
> discharges had some chilling effect on the free speech rights of the business
> agents, we found this concern outweighed by the need to vindicate the democratic
> choice made by the union electorate."

Shortly thereafter, the California Supreme Court extended *Tyra* in *Screen Extras Guild,*

*Inc. v Superior Court* (51 Cal 3d 1017, 1029 [1990]), ruling that the LMRDA preempted all

wrongful termination actions by policymaking employees.  It reasoned that *Finnegan*, *Tyra* and

*Sheet Metal Workers* all stood for "the realization that policymaking and confidential staff are in

**150879/2021  ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No.  001**

**Page 7 of 11**

[* 7]

7 of 11

a position to thwart the implementation of policies and programs advanced by elected union officials and thus frustrate the ability of the elected officials to carry out the mandate of their election" (*id.*) This, in turn, would frustrate "the goal of union democracy embodied by the LMRDA, in contravention of the supremacy clause" (*id.* at 1030).

*Screen Extras Guild* is the most factually analogous case to the one at bar. The plaintiff was not a member of the union and was considered a "management employee" with various duties, including settling wage claims and grievances and granting waivers of certain terms of the collective bargaining agreement between members and motion picture studios. Here, too, plaintiff was an appointed, non-union member employee, who was terminated by a newly elected Executive Director, Kane. Plaintiff describes her job duties in her complaint as follows:

> 11. As Area Director for the Mt. Sinai hospital system, Ms. Alaimo was responsible for negotiating, or supervising negotiations for, NYSNA's collective bargaining agreements with five hospitals and two long-term care facilities.
>
> 12. Ms. Alaimo supervised a staff of six NYSNA employees and supported thousands of nurses within six bargaining units throughout the Mt. Sinai hospital system and three outside facilities

(NYSCEF Doc No. 2). Alaimo's duties required her to negotiate collective bargaining agreements on behalf of the union, supervise six other union employees and hold meetings with bargaining committee members, all of which placed her "in a position to thwart the implementation of policies and programs advanced by elected union officials [like Kane] and thus frustrate the ability of the elected officials to carry out the mandate of their election" (*Screen Extras Guild, Inc,* 51 Cal 3d at 1029; *Thunderburk v United Food & Commercial Workers' Union*, 92 Cal App 4th 1332, 1343 [Ct App, 4 Dist, Div 2 2001] [secretary was confidential employee within meaning of *Finnegan* where she "had access to confidential union information, which, if disclosed, could have thwarted union policies and objectives"]; *Brewer v General*

150879/2021 ALAIMO, TERRY vs. NEW YORK STATE NURSES
Motion No. 001

Page 8 of 11

[* 8]

*Drivers, Warehousemen & Helpers Local Union 89*, 190 F Supp 2d 966, 972 [WD Ky 2002] [holding that even if a policymaking limitation existed, plaintiff, a business agent whose "responsibilities include handling grievances and negotiating collective bargaining agreements" would not fall within it]; *cf. Lyons v Teamsters Loc. Union No. 961*, 903 P2d 1214, 1220 [Colo App 1995] [A purely clerical employee […] is not the type of employee to whom preemption applies]).

Defendant contends that the Second Circuit does not "recognize a policymaking limitation in LMRDA jurisprudence," citing to a string of cases beginning with *Franza v International Bhd. of Teamsters, Local 671* (869 F2d 41, 48 [2d Cir 1989]). In *Franza*, the plaintiff brought suit against the union, of which he was also a member, alleging that he had been discharged from his position as field auditor of the union's health insurance plan in retaliation for supporting the losing candidate in the recent union election. In holding that the plaintiff could not maintain a claim under Title I, the court concluded that the test of whether a claim by a discharged union employee is cognizable under Title I "is not whether the employee is or is not in a policymaking position, rather the question is whether membership rights in the union were directly infringed by action taken with respect to a union member's employment status" (*id.* at 48). However, this assumes that the employee bringing the action is also a member of the union, whose rights could be infringed.

Therefore, if a policymaking limitation existed, plaintiff would not qualify, since even she herself describes her position as managerial in nature, with responsibilities that fall within the realm of policymaking and confidential duties.

**150879/2021  ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No. 001**                                                                        **Page 9 of 11**

9 of 11

[* 9]

While plaintiff in her opposition relies on several cases wherein LMRDA did not preempt state law when it came to termination of an appointed business agent, they are also clearly distinguishable.

For example, plaintiffs in *Clarke v Service Empl. Intl. Union* (137 Nev 460, 469 [2021]) and *Ardingo v Local 951, United Food And Commercial Workers Union* (333 F Appx 929, 934 [6th Cir 2009]) sued for wrongful discharge in violation of employment contracts that required for-cause or just-cause termination. In fact, the *Clarke* court distinguished in a footnote that

> "We do not require the trustee, or an elected union president, to continue a union employee's employment. Instead, we merely hold that, if a trustee or union employer terminates a union employee who has a *for cause* employment contract, that employee's wrongful termination action is not preempted by the LMRDA"

(137 Nev at 465 n 4 [emphasis added]). Enforcement of an employment contract is not at issue here.

In *Bloom v General Truck Drivers, Office, Food & Warehouse Union, Local 952* (783 F2d 1356 [9th Cir 1986]) and *Montoya v Local Union III of the Intl. Bhd. of Elec. Workers* (755 P2d 1221 (Colo Ct App [1988]), the respective courts held that state law causes of actions are not preempted by LMRDA when the terminations are based on an employee's refusal to participate in or cover up criminal activity. "The kind of discharge alleged, retaliation for refusal to commit a crime and breach a trust, is not the kind sanctioned by the [LMRDA]" (*Bloom,* 783 F2d at 1362). Here, the complaint and whistleblower complaint are devoid of any allegations of criminal law violations or that plaintiff was terminated because she refused to participate in criminal activity.

Plaintiff's opposition fails to cite to any analogous cases or articulate a theory under which the LMRDA does not preempt her claim. The LMRDA simply does not protect an individual's right to union employment (*see, e.g.*, *Franza*, 869 F2d at 47; *Eames v Dennis*, 2007

150879/2021 ALAIMO, TERRY vs. NEW YORK STATE NURSES
Motion No. 001

Page 10 of 11

10 of 11

WL 965336, at *8, 2007 US Dist LEXIS 23775, *25 [WD NY Mar. 30, 2007 No. 04 CV 894S] ["[D]ismissal is appropriate because the LMRDA does not protect union employment"]) and permitting an elected union president to pick a staff whose views are consistent with his or her own is consistent with the objective of the LMRDA (*see Sheet Metal Worker's Intl. Assn.,* 488 US at 354-355).

Accordingly, plaintiff's claim for retaliatory discharge in violation of New York's Not-For-Profit Corporation Law Section 715-b is preempted by the LMRDA and her complaint is dismissed.

## CONCLUSION

Based upon the foregoing, it is

**ORDERED** that the motion to dismiss of defendant NYSNA is granted and the complaint is dismissed against it; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of defendant, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs.

April 9, 2024
_____
DATE

_____
SHLOMO S. HAGLER, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150879/2021  ALAIMO, TERRY vs. NEW YORK STATE NURSES**
**Motion No.  001**

**Page 11 of 11**

11 of 11