2015 VT 3

# Dzemila Heco, Kenan Heco and Emir Heco v. Foster Motors, Midstate Dodge, LLC and Johnson Controls, Inc., et al.

[114 A.3d 902]

No. 13-323

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Zonay, Supr. J., Specially Assigned

Opinion Filed January 9, 2015

Motion for Reargument Denied February 4, 2015

*Thomas M. Higgins* of *Pierson Wadhams Quinn Yates & Coffrin, LLP*, Burlington, and *Peter M. Durney* and *James P. Kerr* of *Cornell & Gollub*, Boston, Massachusetts, for Cross-Claim Plaintiff/Appellant Midstate Dodge, LLC.

*John T. Sartore* and *Stephen J. Soule* of *Paul Frank + Collins P.C.*, *Thomas McCormick* of *McCormick, Fitzpatrick, Kasper & Burchard, PC*, Burlington, *Richard K. Wray* and *Tracy G. Ferak* of *Reed Smith LLP*, Chicago, Illinois, and *James M. Beck* of *Reed Smith LLP*, Philadelphia, Pennsylvania, for Cross-Claim Defendant/Appellee Johnson Controls, Inc.

¶ 1. **Skoglund, J.** Midstate Dodge, LLC appeals from a superior court judgment in favor of Johnson Controls, Inc. (JCI) on Midstate's cross-claim for indemnification of compensation paid to plaintiff Dzemila Heco in settlement of a personal-injury action. We affirm, albeit on a different basis from the trial court.

¶ 2. The undisputed facts may be summarized as follows. In August 2007, plaintiff was severely injured when a 2000 Dodge

Neon that she was driving was struck from behind by another vehicle. In July 2010, she filed a personal-injury action against Midstate, the automobile dealer that sold her the vehicle; Chrysler Group LLC, the company that was formed following the bankruptcy of Chrysler Corporation, which manufactured the vehicle; JCI, which manufactured the vehicle's driver's seat; and Autoliv ASP, Inc., which manufactured the vehicle's seatbelts.[1]

¶ 3. In her original and second amended complaints, plaintiff alleged that she suffered spinal cord injuries when her seatback collapsed rearward upon impact and the seat, seatbelt system, and other vehicle components failed to adequately restrain her. She asserted claims of strict products liability, negligence, and breach of warranty against Autoliv for designing, manufacturing, and selling an allegedly defective seatbelt system; against JCI for designing, manufacturing, and selling an allegedly defective seating system; and against Midstate for selling a vehicle that contained the allegedly defective seatbelt and seating systems, that "failed to incorporate other designs and technologies which could protect occupants from foreseeable crash forces in rear impact accidents," and that "lacked adequate and sufficient warnings and instructions about the risks . . . presented by the Neon and reasonable means to reduce such risks."[2]

¶ 4. In February 2012, plaintiff settled with Autoliv and stipulated to its dismissal with prejudice. Shortly thereafter, plaintiff filed a third amended complaint solely against Midstate and JCI.[3] The complaint again alleged strict liability, negligence, and breach of warranty against JCI for designing, manufacturing, and supplying a defective seating system, and against Midstate for selling a vehicle that was not "crashworthy" because of a defective and inadequate seat system, a design that "failed to incorporate other designs and technologies which could protect occupants from

---

[1] The complaint also named as plaintiffs Heco's two sons, and included a claim for loss of consortium on their behalf. For convenience, we refer in this opinion solely to plaintiff. The original complaint also mistakenly listed Foster Motors, Inc. as the vehicle's retailer, but this was corrected in the second amended complaint to Midstate.

[2] The second amended complaint also included claims against Autoliv and JCI for violation of the Consumer Fraud Act, and against Chrysler Group on a third-party beneficiary theory pursuant to an indemnification agreement between Chrysler Group and Midstate, entered into in August 2010, in which Chrysler Group agreed to assume the defense of and indemnify Midstate against plaintiff's claims.

[3] By stipulation, Chrysler Group had been earlier dismissed without prejudice.

foreseeable crash forces in rear impact accidents," and a "lack[ ] [of] adequate and sufficient warnings about the risks." In its answer to the third amended complaint, Midstate included a cross-claim for indemnification against co-defendant JCI, alleging that, if plaintiff sustained any damages, it was caused solely by the acts or omissions of JCI.

¶ 5. Shortly thereafter, in September 2012, plaintiff entered into a settlement agreement with Midstate and Chrysler Group. The agreement provided that, for an undisclosed monetary consideration, plaintiff released Midstate and Chrysler Group from "any and all claims, demands, damages and causes of action under any state or federal law whatever the nature, which are known or unknown, foreseeable or unforeseeable, past, present or future, arising directly or indirectly out of the Vehicle, the Incident or the Lawsuit." Based on the settlement agreement, the trial court issued an order of dismissal with prejudice in favor of Midstate and Chrysler Group.

¶ 6. Plaintiff's settlement agreement with Midstate and Chrysler Group preserved her remaining claims against JCI, expressly recognizing her "inten[t] to continue" the lawsuit against JCI to recover the "full value" of her injuries. While those claims remained pending, however, JCI moved for summary judgment on Midstate's cross-claim for indemnification. Following further briefing and argument, the trial court issued a written decision granting the motion. Relying on the Restatement (Third) of Torts: Apportionment of Liability § 22(a) (2000), the court concluded that an essential precondition to Midstate's indemnification claim was a complete settlement and discharge of JCI's liability to plaintiff, and that absent such a discharge the claim failed as a matter of law.[4]

---

[4] The Restatement section in question provides, in part, as follows:

> When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:
>
> (1) the indemnitor has agreed by contract to indemnify the indemnitee, or
>
> (2) the indemnitee
>
> (i) was not liable except vicariously for the tort of the indemnitor, or

¶ 7. A jury trial in June 2013 on plaintiff's remaining action against JCI resulted in a verdict in favor of plaintiff on the products-liability claim.[5] The trial court thereafter entered a final judgment for plaintiff and against JCI in the amount of $36,948,123, which was the subject of a separate appeal.[6] In August 2013, the trial court also entered a final judgment in favor of JCI and against Midstate on the cross-claim for indemnity. This appeal by Midstate is of that judgment.

¶ 8. Because it forms the basis of the trial court's ruling, the issue primarily briefed by the parties on appeal is whether an indemnitee invoking common law equitable indemnity must extinguish the liability of the indemnitor to collect indemnity. In its pleadings below, however, JCI advanced an alternative, more fundamental argument in support of the motion for summary judgment; it asserted that the settlement agreement with plaintiff discharged Midstate from potential vicarious liability quite separate and independent from JCI's potential liability, and that Midstate could not therefore compel JCI to compensate it for the Midstate's "own vicarious liability for the conduct of Chrysler Group and Chrysler" in no way attributable to JCI.

¶ 9. ▮ Although the trial court did not resolve this alternative argument, it was — as noted — expressly raised below, and both parties have addressed it on appeal. Furthermore, if JCI is correct, it represents a clearly preferable basis of decision, resting on well-settled and universally recognized common-law principles as opposed to a question which our prior decisions have not yet addressed and a Restatement section that we have not yet adopted. See, e.g., *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999) (observing that courts will not ordinarily reach out to decide "novel" issues where case can be resolved on narrower grounds); *Robey v. Superior Court*, 302 P.3d 574, 590 (Cal. 2013) (noting that "judicial restraint" counsels in favor of "deciding novel issues only when the circumstances

---

(ii) was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.

Restatement (Third) of Torts: Apportionment of Liability § 22(a).

[5] During trial, plaintiff dismissed all but the strict products-liability claim, and her sons dismissed their claims for loss of consortium.

[6] In September 2014, the parties stipulated to a dismissal of that appeal.

require") (quotations omitted); accord *State v. Bauder*, 2007 VT 16, ¶ 27, 181 Vt. 392, 924 A.2d 38 (recognizing in context of constitutional law the "fundamental tenet of judicial restraint" that courts will not address "novel" claims where adequate alternative grounds are available).

¶ 10. ▮ It is axiomatic that a party seeking implied equitable indemnity may recover only where its potential liability is vicariously derivative of the acts of the indemnitor and it is not independently culpable. See *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 18, 183 Vt. 452, 956 A.2d 528 ("[E]ven where the liability of a manufacturer of a product is based on strict liability in tort, it is required to indemnify the seller of the product to the consumer if the seller is found liable to the consumer but is not independently culpable."); *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 29, 742 A.2d 734, 737 (1999) (observing that implied equitable indemnity is generally "appropriate only when the indemnitee is vicariously or secondarily liable" for condition "caused by the act of the indemnitor, who is primarily responsible for the condition"); *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex. 2006) ("Under the common law, a person is entitled to indemnity for products liability only if his liability is entirely vicarious and he is not himself independently culpable."). As we recognized in *Windsor*, 2008 VT 27, ¶ 18, this principle is carried forward in the current Restatement, which allows for noncontractual indemnity only where the indemnitee is "not liable except vicariously for the tort of *the indemnitor*," or where the indemnitee sells a product supplied by the indemnitor and the indemnitee is *"not independently culpable."* Restatement (Third) of Torts: Apportionment of Liability § 22(a)(2)(i) & (ii) (emphases added). Such independent culpability need not arise exclusively from the primary negligence of the indemnitee. See, e.g., *Hudiburg*, 199 S.W.3d at 260 (holding that, where acts or omissions of assembler of truck chassis and service bed were "attributable" to truck dealer, dealer was "independently" culpable and barred from asserting indemnity action against chassis and service bed manufacturers).

¶ 11. ▮ Here, as noted, plaintiff's third amended complaint alleged not only that Midstate was vicariously liable for the allegedly defective seating system supplied by JCI, but was also vicariously liable for Chrysler's role in selling a vehicle that

"failed to incorporate other designs and technologies which could protect occupants from foreseeable crash forces in rear impact accidents," and "lacked adequate and sufficient warning and instructions about the risks . . . presented by the Neon." Under the settlement agreement with Midstate, plaintiff broadly discharged Midstate and Chrysler Group from "all claims . . . known or unknown, foreseeable or unforeseeable, past, present or future, arising directly or indirectly out of the Vehicle, the Incident or the Lawsuit." It is clear, therefore, that plaintiff discharged Midstate's potential vicarious liability *not only* for the acts of JCI, but also Chrysler, and as such Midstate may not assert equitable indemnity to compel JCI to reimburse it for the undisclosed monetary compensation it paid in settlement.

¶ 12. Midstate's arguments to the contrary are not persuasive. It claims that it could not be independently liable because Chrysler Corporation, the entity that manufactured the vehicle, declared bankruptcy and was not a named defendant. The argument ignores the plain fact that Midstate was sued based on its vicarious liability for the acts of both JCI and Chrysler Corporation, and chose to settle and compensate plaintiff in exchange for the discharge of any potential vicarious liability "arising directly or indirectly out of the Vehicle." Midstate also claims that an indemnitee's independent culpability must be predicated on active negligence. It advances no persuasive argument or authority, however, to support the claim, which we find unavailing. See *Hudiburg*, 199 S.W.3d at 260.

¶ 13. ■ Accordingly, while we rely on an alternative rationale, we find no basis to disturb the judgment in favor JCI. See *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 28, 676 A.2d 774, 778 (1996) (observing that we may affirm on different "rationale" from trial court where the judgment was otherwise "proper").

*Affirmed.*