ACE FIRE UNDERWRITERS INSURANCE COMPANY, Plaintiff,

v.

SHERATON VERMONT CORPORATION, Defendant/Third–Party Plaintiff,

v.

J. Hutchins, Inc. d/b/a Landshapes, Third-Party Defendant.

Case No. 5:15–cv–7

United States District Court, D. Vermont.

Signed April 15, 2016

Joseph D. Fallon, Esq., Hinesburg, VT, Michael J. Lorusso, Esq., Samuel J. Pace, Jr., Esq., Dugan, Brinkmann, Maginnis and Pace, Philadelphia, PA, for Plaintiff.

William A. Staar, Esq., Morrison Mahoney LLP, Manchester, NH, for Defendant/Third-Party Plaintiff.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

(Docs. 37, 39)

Geoffrey W. Crawford, Judge, United States District Court

This is a premises liability case in which Plaintiff Ace Fire Underwriters Insurance Co. has filed suit as the subrogated insurer for the owner of a Stradivarius violin. The violin was seriously damaged when Soovin Kim, a prominent violin soloist, slipped on the grounds of the Sheraton Hotel in South Burlington, Vermont.

Defendant Sheraton Vermont Corporation (Sheraton) and third-party Defendant J. Hutchins, Inc. (Hutchins) have filed Motions for Summary Judgment. (Docs.37, 39.) Sheraton operates the Sheraton Hotel. Hutchins held the snow removal contract at the time in question.

Sheraton seeks summary judgment against Plaintiff's claim on the ground that it owed Plaintiff no duty of care under the circumstances of this case and that any possible breach of a duty by Sheraton is offset by sufficient comparative negligence by Mr. Kim to bar any recovery.

Hutchins seeks summary judgment against Sheraton's claim for implied in-

demnity. The parties now agree that there is no viable claim for contribution in Vermont.

After reviewing the motions for summary judgment, the court issued an order requesting two things: a final, definitive account of the theory of Plaintiff s claim of negligence, and a clearer depiction of the grounds of the Sheraton hotel. (Doc. 54.) Both have been submitted. Plaintiff has filed a memorandum with an expert report from an architect who concludes that the premises were unsafe due to a lack of signage and a barrier. (Doc. 58.) Sheraton has filed a reply memorandum renewing its arguments in favor of summary judgment. (Doc. 59.)

## FACTS

The facts are not in dispute. On January 14, 2012, Mr. Kim was a guest at the Sheraton. He had arrived a few days before to prepare for two concerts at St. Michael's College with the Burlington Chamber Orchestra. Mr. Kim rented an automobile during his stay.

On January 14, Mr. Kim drove to St. Michael's College at about 6:30 p.m. for the concert. (Kim Dep. 39.) He carried a garment bag and the violin in a hard case with a shoulder strap. (Id. 41.) He does not remember whether he wore his dress shoes or carried them in a small bag. (Id. 42–47.) It was a snowy night and the weather conditions at St. Michael's College were slippery when he arrived and also when he left the college at about 11:00 p.m. (Id. 47–49, 51.)

After the concert, Mr. Kim drove directly back to the Sheraton Hotel. He parked in the lot near the entrance to the hotel closest to his room (Entrance D.) He did not feel particularly tired, (id. 60), and he had not had anything to drink (id. 46). Mr. Kim got out of his car and walked towards the front of the car. There was a flowerbed immediately between his car and the paved walkway leading to Entrance D. The walkway is approximately two feet lower in elevation than the surface of the parking lot.[1] The sloped flowerbed served as a barrier between the parking lot and the walkway. It was covered in a few inches of snow.

Mr. Kim stepped onto the flowerbed. When he took a second step, his feet went out from under him and he fell forward onto the violin case. He landed hard and suffered minor scratches to his neck.

Mr. Kim got up and went upstairs to his room. He immediately checked the violin and was horrified to see that the body was cracked in several places. He took photos of the damaged violin and returned outside to take pictures of the place where he had fallen.

Conditions in the parking lot that evening were snowy. It had been plowed at some point, but there was snow piled up in low mounds immediately behind and between parked cars. The amount of snow was light to moderate. In other words, there is no evidence of blizzard conditions or of drifts or deep accumulations of snow. The photos taken by Mr. Kim show an accumulation of a few inches of snow between and just behind the parked cars.

---

1. The court's basis for the difference in elevation is based on an examination of the photographs supplied with Mr. Moore's report. It is only an estimate. The difference appears to be more than a foot and less than three. It could be determined by anyone with a stake and a level. The photos also show three steps descending from the parking lot to the sidewalk in the vicinity of Entrance D. At a maximum riser level of 7 inches, the three steps would suggest an elevation change of 21 inches. International Building Code, § 1009.3, adopted by Vermont Fire and Building Code.

**Expert Opinion of Kirk Moore, AIA**

Plaintiff has now submitted an expert opinion from a Vermont architect. Mr. Moore conducted an investigation of the site. He has provided photos and a comprehensive description of the site which was not previously available to the court. These are undisputed. He has also provided an opinion that the lack of signage and direction to patrons as well as the absence of a barrier created a hazardous situation which caused Mr. Kim's fall.

The evidence concerning the design of the site sheds new light on the incident. The parking lot where Mr. Kim parked his car is several feet above the sidewalk which leads to Entrance D, which is the entrance closest to Mr. Kim's room. A person leaving his car where Mr. Kim parked faces a choice. He could walk to either end of the parking lot and enter the walkway by a short ramp (the driveway end) or down a few steps (the end closest Entrance D). Or he could do as Mr. Kim did which was to step onto the flowerbed which slopes down to the sidewalk.

The former route (two routes, really, since a guest could walk along the parking lot to either end of the walkway) is favored by the hotel since the walkway is cleared of snow. The route across the flowerbed is more direct but more hazardous because of the slope of the bed and the presence of ice and snow in the winter. There are no signs or barriers to guide the guests in choosing one route over another. The sight line to the steps which lead from the parking lot down to the walkway at the end of the lot closest to Entrance D may be blocked by parked cars. In the opinion of Mr. Moore, a barrier or a sign was required to direct guests away from the

sloping bank and towards the steps to the walkway near Entrance D.

**Facts Related to the Indemnity Claim**

The parties agree that Third-party Defendant Hutchins held the landscaping contract for the grounds of the Sheraton Hotel at the time in question. The parties also agree that during winter months, Hutchins contracted to plow, shovel, and salt the driveways, parking lots and exterior walkways. Neither Hutchins nor Sheraton claims that Hutchins was under any obligation to clear or otherwise maintain the lawns and gardens during the winter months. (The contract contains a provision for winter pruning of fruit trees which has no application to this case.) No obligation to maintain the flowerbed concerned in this case during the winter months appears in the parties' contract.

## *ANALYSIS*

### I. **Summary Judgment Standard**

In deciding a motion for summary judgment, the court considers all evidence in the light most favorable to the non-moving party. *Kazolias v. IBEWLU 363*, 806 F.3d 45, 49 (2d Cir.2015). This standard requires the court to accept as true the affidavits and other evidence submitted by the non-moving party. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 348 (2d Cir.2003) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996)). (Although Mr. Moore's report is not sworn, the court accepts his report as a summary of his proposed trial testimony.)[2] The motion must be denied if there is a reasonable likelihood that a jury could credit the disputed testimony and rule in favor of the plaintiff.

---

2. *See Shinabarger v. United Aircraft Corp.*, 262 F.Supp. 52, 56 n.3 (D.Conn.1966) (existence of unsworn statement, "although not presently in evidentiary form, should alert the sum- mary judgment court to the availability at the trial of the facts contained in the statement"), *aff'd in part, rev'd in part on other grounds*, 381 F.2d 808 (2d Cir.1967).

## II. Duty of Care

■ The law in Vermont regarding the duty of care of a landowner to persons lawfully on the premises is well-established. The standard is negligence determined on the basis of the foreseeability of an unreasonable risk of injury. *See Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 27, 197 Vt. 176, 102 A.3d 1101. In the context of premises liability, the rule is expressed as the defendant is "bound to use reasonable care to keep its premises in a safe and suitable condition so that plaintiff would not be unnecessarily or unreasonably exposed to danger." *Garafano v. Neshobe Beach Club, Inc.*, 126 Vt. 566, 572, 238 A.2d 70, 75 (1967). This is a standard directed at Sheraton's conduct, not Mr. Kim's.

■ If Mr. Moore's professional opinion is accepted for purposes of summary judgment—and any contrary evidence rejected—then Plaintiff has made out a prima facie case of negligence. There is little doubt that the sloping, slippery, snow-covered flowerbed presented a hazard to a pedestrian. There is evidence that it was crossed by hotel guests taking the quick route to the sidewalk. Whether a prudent hotelier would have seen the need for a sign or a barrier is an issue which can be argued either under the heading of foreseeability ("Who would ever imagine that a guest would be so foolish as to walk across an obvious hazard?") or unreasonable risk of injury ("The likelihood of someone walking across the snow-covered bed and falling down is so slight that no sign or barrier is necessary."). But these are trial issues, not issues which the court can resolve by motion.

The principal argument raised by Defendants is that Mr. Kim is responsible for his unwise decision to venture across the snow-covered flowerbed and for his ensuing fall. This claim is better analyzed as an issue of comparative negligence than an issue concerning Sheraton's duty of care. Again, the defense of comparative negligence usually raises factual issues for trial. In *Garafano*, the Vermont Supreme Court rejected the claim by the property owner that a guest injured when he stepped in a hole in the course of a softball game was guilty of some degree of contributory negligence, which in 1967 operated as a complete bar to recovery. *Cf.* 12 V.S.A. § 1036 (comparative negligence statute enacted in 1969 Adjourned Session).[3] This court could expect no different treatment were it to rule as a matter of law that Mr. Kim was more than 50% responsible for the injury to the Stradivarius violin.

Mr. Kim is not the owner of the Stradivarius. The owner lends it to him on a long-term basis. It is not clear that comparative negligence would limit the owner's claim for damage, but this issue is not before the court and is not decided here.

## III. The Indemnity Claim

· ■ Sheraton seeks indemnity from Hutchins if it is held liable to Plaintiff. It

---

3. In identifying the factual issues critical to the contributory negligence defense, the Vermont Supreme Court wrote:

Negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person. Was the plaintiff deceived by the circumstances shown to exist here or did he fail to use due care for his own safety? *Does the evidence show that the plaintiff should have given the ground a more through and careful examination to discover any holes or hidden dangers or that he reasonably should have known of the existence of the hole? Was he acting as a careful and prudent person under the circumstances?* These questions of fact were clearly for resolution by the jury. *Garafano*, 126 Vt. at 573, 238 A.2d at 76 (citations omitted). Almost fifty years later, the same factual questions continue to lie at the heart of the comparative negligence issue.

acknowledges that there is no right to contribution among joint tortfeasors under Vermont law. It also acknowledges that there is no express indemnity provision within the parties' contract. It relies upon the doctrine of implied indemnity which creates a duty

> [w]here a person has become liable with another for harm caused to a third person because of his safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe....

(Doc 38 at 3 (citing *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 29, 742 A.2d 734, 737 (1999).)

There are several fatal shortcomings in Sheraton's implied indemnity claim. The first is that Sheraton has identified no duty on the part of Hutchins to remove snow or otherwise maintain the flowerbed. The scope of work defined in the parties' contract is undisputed, and the winter work of plowing and salting parking lots and walkways is defined on the second page of the parties' contract. (Doc. 37–2 at 8–10 (property maintenance contract).)

The second reason is that the doctrine of implied indemnity is a limited exception to the rule against contribution among joint tortfeasors. *White*, 170 Vt. at 28–29, 742 A.2d at 736–37. It requires a showing that the party seeking indemnification (Sheraton) has been compelled to pay damages through vicarious liability or some other secondary basis which arises without fault on its own part. *See Heco v. Foster Motors*, 2015 VT 3, ¶ 10, 198 Vt. 377, 114 A.3d 902 ("It is axiomatic that a party seeking implied equitable indemnity may recover only where its potential liability is vicariously derivative of the acts of the indemnitor and it is not independently culpable.")

■ The claim against Sheraton is not derived in any way from the actions of Hutchins. As Plaintiff's supplemental brief (Doc. 58) makes clear, Plaintiff's claim relates to the choice of signs and the absence of a hedge or fence. These are matters which are primarily within the control of Sheraton, not Hutchins. The contract between the parties demonstrates that Hutchins is responsible only for landscape maintenance. The claim of implied indemnity is barred by the doctrine of secondary or vicarious liability, which the Vermont Supreme Court has consistently recognized as a prerequisite for any claim of implied indemnity.

### CONCLUSION

Defendant Sheraton's Motion for Summary Judgment (Doc. 39) is DENIED. Third-party Defendant J. Hutchins' Motion for Summary Judgment (Doc. 37) is GRANTED.